Morrison, Administrator
v.
Morrison.

2 Laws of Ala 829.

---

## CRAIG v. BLOW.

1. A. holding a bond on B., placed it for collection in the hands of C., an attorney at law; the attorney being indebted to D., in conjunction with the latter, prevailed with B., in consideration of a surrender to him of his bond to A., and a promise from them that the attorney would satisfy A. therefor, to execute a bond to said D., for the amount of, and in discharge of his bond to A. D. brought suit on the last mentioned bond against B., who pleaded the foregoing facts, and in addition, that C., the attorney, not having paid A. the *first mentioned bond*, A. had brought suit thereon against B.—held that this was not a sufficient plea of failure of consideration.
.And a plea that C. and D., to deceive and defraud B., falsely and fraudulently represented to him that C. was authorized to surrender and cancel the bond due to A., and to discharge B from liability thereon; and that in consideration B. would execute said bond to D., to secure the debt due from C. to D., he C., would surrender said bond due A. to B., and thereby discharge him from all liability thereon; and that said B., giving faith to said false and fraudulent representations, &c., and in consideration thereof, executed said bond to D., is not a good special plea of fraud.
3. Upon overruling a demurrer to a plea, and giving leave to the plaintiff to reply, it is not error that the Court below did not require the demurrer to be withdrawn, before the replication was filed; the reply is a virtual withdrawal of the demurrer.
4. A refusal of the Court below to permit an amendment of a plea, after the overruling of a demurrer, will not be revised by this Court, unless it is shewn in the record in what the proposed amendment consisted.

An action of debt was commenced in the Circuit Court of Lauderdale county, by Blow against Craig, upon a writing obligatory, executed by the latter to the former, for

$1,050 50. The writ was returnable to April term, 1828, at which time the defendant, Craig, filed three special pleas in bar; the first alleging a failure of consideration; the second, facts averred to constitute a failure; and the last, a fraud in procuring said writing. The second and third pleas are fully set forth in the opinion of the Court. A demurrer was filed to each plea; that to the first was overruled, and leave given the plaintiff to reply; and those to the two last were sustained; whereupon, the counsel for the defendant below moved for leave to amend his third plea, which was refused. An issue was then formed upon the first plea, which was tried at October term, 1828, when a verdict was returned in favor of Blow, and judgment accordingly entered up against Craig for the debt, damages, and costs.

Craig thereupon sued his writ of error to this Court, and here assigns as error, 1st. the sustaining of the demurrers to the second and third pleas; 2d. the granting of leave to the plaintiff below, to reply to the first plea, before he had withdrawn his demurrer thereto, and 3d. the refusing to give the defendant below, leave to amend without terms, his third plea, after the demurrer thereto was sustained.

W. B. MARTIN, for plaintiff in error, and P. ANDERSON, for defendant in error, submitted the case without argument.

By JUDGE WHITE. The first assignment of errors renders it necessary that we should particularly examine the nature and sufficiency of the two last pleas, the first of which is in these words: *"actio non,* because he says that the consideration for which said supposed writing obligatory, was made and executed, has wholly failed in this; that at and before the execution thereof, he said defendant was indebted to Ezra S. Ely, executor, &c., in the sum of $————, secured to be paid by the writing of this defendant, which was then due, and part of which had been paid, leaving a balance of $———— yet due, which said writing was in the hands of G. A. Dawson, an attorney at law, for collection; whereupon, it was represented to this defendant by said Dawson, and by the said plaintiff in this action, that said Dawson was indebted to the said plaintiff, in the sum of $————, and that said Dawson was indebted to other persons in Florence, to the amount of $————, amounting in all to the sum of $1050 50,

57

the amount due from said defendant to said Ely; where-upon, it was proposed to this defendant by the plaintiff, and by said Dawson, that he should execute his said writing obligatory to the plaintiff, for said sum of $1050 50, and that said Dawson should surrender to the defendant, and acknowledge satisfaction of the note due to said Ely, and that he Dawson, who was about to leave Florence for Philadelphia, the place of residence of said Ely, would on his arrival, pay off and discharge said debt, so due from said defendant to said Ely; and the defendant avers that giving full faith to the representations of said plaintiff, and said Dawson, and believing said Dawson fully authorized to surrender to him said note, and to acknowledge satisfaction thereof; and that he would in good faith pay and discharge the debt due from defendant to said Ely, and that said defendant should not in any manner be further liable, and that he should thereupon be wholly discharged; did then and there and in consideration thereof, execute his said writing obligatory to the plaintiff, and received his said note so due as aforesaid to said Ely. And the defendant further avers, that said Dawson has wholly failed to pay, satisfy and discharge the debt due from the defendant to said Ely, &c. The payment, discharge and exoneration from which, of this defendant, was the sole and only consideration passing to this defendant, for his making said writing obligatory to plaintiff, and that said Ely has commenced an action against the defendant for the recovery of said sum, in the Circuit Court of Lauderdale county, in chancery, all of which," &c. This is the plea at length, the validity of which, we are now considering. And the inquiry is, do the facts stated shew a failure of consideration; what according to these allegations, was that consideration? Though there be some little inconsistency of expression, it is evident from the whole plea that it was an acquittal or discharge of Craig from his liability to Ely, which the defendant states was the consideration of his bond to Blow; or rather this was the inducement on the part of Craig to give the writing obligatory here sued on. How then does it appear that he is not discharged? True it is alleged that Dawson did not pay Ely, and that a suit at the instance of the latter is pending against Craig; but it is not said that a recovery has been had, nor can it appear that this will be the case. For although Dawson may not have paid Ely, and although as an attorney at law, he was not authorized to settle the claim in the manner he

did, yet it does not follow, nor is it alleged, that he had no higher authority to cancel the note against Craig. For aught that appears, he may have been invested with general authority as an attorney in fact, to settle in any manner he might think proper, and if so, a delivery of the note to Craig, as stated in the plea, was a full indemnity to him. The plea then, in not shewing that Craig was not absolved from liability, is evidently bad. This was a fact too important to be left to inference. It should have been stated with clearness and precision, so as to be susceptible of traverse.

But again, from the arrangement between the parties, as set forth in the plea, Blow released Dawson from debts due to himself, and assumed the payment of those he owed others, to the amount of the bond in question. There then is a great inconvenience and loss to Blow, which of itself, would according to authority, furnish a sufficient consideration to sustain the bond. Whatever may be the character of the contract as between Craig and Dawson, it would be most manifestly unjust to bar the recovery of Blow, when he had relinquished other debts to the full amount, for this claim on Craig, and taken no other indemnity. There can then be no doubt but that the demurrer to this plea was well sustained.

The third plea, which is a plea of fraud, states that "at the day of the date of said writing obligatory, he the defendant, was indebted to Ely by note, and that Dawson had said note for collection, as stated in the other plea, and that Dawson was indebted to Blow and others, to the amount of $———. Whereupon, to deceive and defraud the defendant, said plaintiff and said Dawson, falsely and fraudulently represented to said defendant, that he Dawson, was authorized to surrender and cancel the note due from defendant to said Ely, and to discharge defendant from all liability thereon; and that in consideration that said defendant would execute said writing obligatory to said plaintiff, to secure the debt due from him, Dawson, to the plaintiff, that he Dawson would surrender defendant's note to him, and thereby discharge him from all liability thereon; and that defendant giving full faith to said false and fraudulent representations, &c., executed his writing obligatory, in consideration thereof, and none other." The fraud here relied on, is the false representation of Dawson's authority to cancel Craig's note to Ely. To make this available in bar of the action, the represen-

tation made, must not only be false, but fraudulent, and this cannot be, if the person to whom it was made, had an equal or better opportunity of judging of its correctness, than he who made it.    In such a case, the law would require him to take care of his own interest, by observing the fact as it really was; and besides, it implies an absurdity to suppose that he who is best acquainted with a fact can be deceived about it.    Apply this principle to the case before us.    Craig was indebted by note to Ely; this note was in the hands of Dawson for collection, and part of it had been previously paid.    Blow is not shewn to have had any knowledge of, or connection with the transaction, until the final arrangement.    Then it is most obvious, that Craig's opportunity of knowing the extent of Dawson's authority, was much better than that of Blow, and if he was deceived, it was with his eyes open.    But if the deception arose as to Dawson's power to cancel the claim as an attorney at law, the knowledge of this is to be charged upon Craig, and his ignorance of the law can avail him nothing.    Again, this plea does not even aver that Blow knew of the falsity of the representation he is said to have made, and without this, he could not have intended to commit a fraud; neither is it alleged that Craig's note was not cancelled, and he acquitted from future liability to Ely.    Then he does not appear to have been damaged, and fraud without damage, will neither furnish ground for a suit, nor a defence to an action.    The Circuit Court therefore did not err in sustaining the demurrer to this plea.

The next assignment of errors is, that the Court below erred in giving the defendant in error, leave to reply to the first plea, before he had withdrawn his demurrer.    The latter clause of the act of 1824, entitled "An act to regulate proceedings at common law," provides "that when a demurrer is overruled, the Court shall grant leave to withdraw the demurrer and plead to the merits."    The design of this seems to have been to prevent taking advantage of error in overruling demurrers, after pleading to the merits, and hence the statute gives power to the Courts, to require that the demurrer should be first withdrawn.    But if this be done by implication, the same end is attained, and no injury can result to the other party. He, therefore, should not complain.    In this case, although the record does not state in express terms, that the demurrer was withdrawn before replication filed, yet this is, and in all such cases must be, the fair inference to be drawn, and no injury

arises. But it seems strange that this objection should come from the plaintiff in error. When he filed his plea, if he believed it good in bar, and knew it to be true, in fact, he must have expected and desired that an issue should be joined upon it. When then the Court determined the plea to be sufficient, if true, to bar the action, a replication and issue must have met his desire and expectation; and if allowed, as shewn in a way which could not prejudice his rights, he should be content. This assignment of error cannot be sustained.

The last is, that the Court erred in refusing to permit the plaintiff in error to amend his third plea. In the same section above referred to, of the act of 1824, it is provided "that the Courts after judgment in favor of a demurrer, may authorize an amendment upon terms." It cannot be insisted that the provision imposes an imperative duty on the Courts. The very words are of a different import and give a discretion. If such discretion did not exist, and the Courts were compelled to permit amendments, in many cases this license to the party would be productive of great delays, and subject to much abuse. A defendant, after a demurrer sustained to his plea, might present a new set of facts, which if insufficient to bar the action, would require another demurrer. But should they be good, if true, the plaintiff might be taken by surprise, or compelled to give a term; and if this might be done once upon the principles insisted on, where and how could he be stopped. The payment of all the costs, the extent to which the Court would go in imposing terms, would not always have this effect; for he might expect ultimately to pay the costs at all events. The legislature then as we conceive, to prevent such abuses, designed not only to invest the Courts with the power of imposing terms, but also with a discretionary power as to granting amendments; and if this be so, though it were apparent that the Court should have allowed the defendant below to amend his third plea, we could not here correct the error.

On this point a majority do not concur; but we all agree that as it does not appear in what the Court below was requested to allow amendment, there was no error in the refusal. The judgment must be affirmed.

Judgment affirmed.

JUDGE SAFFOLD, not sitting.