Van Blarcom v. Dager.

ADRIAN VAN BLARCOM and EDWARD R. WEISS, executors &c., appellants,

v.

JOSEPH THOMAS DAGER and others, respondents.

Where the income of all of a testator's property was given to his wife, for life, with a gift over of the principal at her death.—*Held,*

(1) That the premium received by her on certain gold coin belonging to testator's estate, was part of the corpus, and not income to which she, as life tenant, was entitled.

(2) That the interest receivable by her must be computed from the date of testator's death.

On May 1st, 1862, George W. Hughes, of Paterson, in the state of New Jersey, then temporarily living in Russia, departed this life, and having before his death, and on the 31st day of December, 1858, duly made and executed his

NOTE.—If a legacy be given in a foreign country, and in a foreign coin, but payable in England, the rule is to compute the amount *there,* as converted into sterling, without any allowance for exchange or the expense of remittance.    *Cockerell* v. *Barber, 16 Ves. 461; Holmes* v. *Holmes, 1 Russ. & Myl. 660; Saunders* v. *Drake, 2 Atk. 466; Otis* v. *Coffin, 7 Gray 511; Bowditch* v. *Soltyk, 99 Mass. 136; Stewart* v. *Chambers, 2 Sandf. Ch. 282.*    See *Campbell* v. *Graham, 1 Russ. & Myl. 453, 2 Cl. & Fin. 429; Scott* v. *Bevan, 2 Barn. & Ad. '78; Lansdowne* v. *Lansdowne, 2 Bligh 60; 1 Rop. on Leg. *856; Blanchard* v. *Equitable Co., 12 Allen 386; Scofield* v. *Day, 20 Johns. 102; Wilson* v. *Morgan, 4 Roberts. 58; Robinson* v. *Hall, 23 How. Pr. 342; Grant* v. *Healey, 3 Summ. 523; Baker's Appeal, 59 Pa. St. 313; Carter* v. *Swift, 1 Low. 398; Doll* v. *Earle, 65 Barb. 298; Tufts* v. *Plymouth Co., 14 Allen 407; McClarin* v. *Nesbitt, 2 Nott. & M. 519; Cary* v. *Courtenay, 103 Mass. 316; Bohn* v. *Broadhagen, 2 Cin. (Ohio) 2.*

Van Blarcom *v.* Dager.

last will and testament in due form of law, and published the same in the presence of three subscribing witnesses thereto, as follows:

"I, George Washington Hughes, of New Jersey, in the United States of America, now temporarily residing in Russia, make, publish and declare this to be my last will and testament, namely:

"I give, devise and bequeath to my wife, Catharine Hughes, for and during her natural life, all my property, real and personal, to have, receive and use the income thereof, but without power to alienate or encumber the principal thereof, and with the condition that she shall pay out of said income the sum of one thousand dollars to my son George Washington Hughes, when he attains the age of twenty-one years, and shall also pay the like sum to each other child of mine, on its arrival at the age of majority.

"I give, devise and bequeath to my son George Washington Hughes, upon and after the death of said Catharine, my wife, all my property, real and personal, to be equally shared, however, by him with any other child or children of mine then living.

"If neither my said son nor any other descendants of mine are living at the time of the death of my wife aforesaid, then, upon her death, I devise, bequeath and direct that all my property, real and personal, shall be equally distributed as follows, namely: one-fifth part to the children of my brother John Hughes; one-fifth part to the children of my brother Jarrett Hughes; one-fifth part to the children of my brother Scott Hughes; one-fifth part to the children of my brother William Hughes, and one-fifth part to the child of my deceased sister Elizabeth Davison.

---

In *Cole* v. *Cole*, *1 Dev. 460*, a bequest of a slave and her increase, passed only the increase born after testator's death. See *Holmes* v. *Mitchell*, *4 Md. Ch. 263; Perry on Trusts § 546.*

In *Brewster* v. *McCall*, *15 Conn. 274*, a testator gave to his wife one-third of the use of a certain farm, during her natural life, "together with the stock of said farm."—*Held*, that she took the stock absolutely. See *Loveren* v. *Lamprey*, *22 N. H. 434; Moultrie* v. *Hunt*, *10 Am. Law Reg. 165; Dole* v. *Johnson*, *3 Allen 364.*

An unconditional bequest of the dividends of certain stock, is a bequest of the stock itself. *Collier* v. *Collier*, *3 Ohio St. 369.*

In *Hartley* v. *Allen*, *4 Jur. (N. S.) 500*, £17,000, profit derived by a corporation from the sale of new shares of stock issued by the company, was ordered to be divided ratably among the stockholders,—*Held*, that a life tenant of certain of the old shares was not entitled to any part thereof.

In *Brander* v. *Brander*, *4 Ves. 800*, a life tenant was held to be not entitled to a dividend of the surplus capital or reserved profit of a

"And I hereby revoke any former will or wills made by me, and declare this to be my last will and testament.

"And I nominate and desire to have appointed as executrix of this my last will and testament, my wife Catharine Hughes, and desire that she may not be required to give any bonds regarding its execution."

Testator's only child, George Washington Hughes, died before him, leaving no lawful issue. Joseph Davison, the son of testator's sister, Elizabeth Davison, died after testator, but before testator's wife, Catharine Hughes. Testator's brothers survive. On September 15th, 1862, Catharine Hughes proved the will before the surrogate of Passaic county. Part of the estate consisted of roubles and copecks deposited in St. Petersburg, and sterling in London, then of the gold value of $37,499.51, which the executrix sold, on October 21st, 1862, @ 139, producing in currency, $52,573.89.

On October 20th, 1868, Catharine married Edward M. Weiss.

A bill was filed for a construction of the will, and an injunction issued to prevent Catharine and her husband from transferring or converting to their own use, any part of the estate; and, also, a *ne exeat* to prevent their leaving the state until after they had transferred the funds of the estate, by an assignment, to a receiver appointed by the court. The assignment was executed.

---

bank, ordered by the corporation to be divided ratably among the stockholders.

In *Hooper* v. *Rossiter, 13 Price 774,* under a bequest of the interest, dividends, proceeds and profits of a sum of stock, to S. F. for life, and of the stock itself, at her death, to E. A. F., a bonus of twenty-five per cent. derived from an increase of the stock of the company, was held to go to E. A. F., the remainderman.

In *Maclaren* v. *Stainton, 3 DeG. F. & J. 202,* a large deficiency due from a testator to a corporation was compromised by his executors, and, after its payment, the company declared a bonus thereof, on its shares,—*Held,* that the whole of such bonus on the shares that constituted the residuary estate, belonged to the tenants for life, as income. Also, *Nicholson* v. *Nicholson, 9 W. Rep. 676.*

In *Simpson* v. *Moore, 30 Barb. 637,* after a trust to executors to invest and pay the income of one-sixth of testator's estate to his widow for life, and then over, an investment was made in bank stock. The bank re-organized and declared a dividend of eighteen per cent., leav-

On May 11th, 1877, Catharine died, leaving a will, and
her executors were thereupon substituted in this suit.

The following is the opinion of the vice-chancellor :

The following conclusions have been reached. No formal
opinion will be filed.

First—The legacy to Joseph Davison vested in him on
the death of the testator, and his representatives are
entitled to it. *Post* v. *Herbert, 12 C. E. Gr. 540; S. C., 11
C. E. Gr. 278; Van Dyke* v. *Vanderpool, 1 McCart. 198;
Howell* v. *Green, 2 Vr. 570; Beatty* v. *Montgomery, 6 C. E.
Gr. 324.*

Second—The income bequeathed to the testator's widow
for life, did not begin to accrue until one year after the pro-
bate of his will. The gift is a legacy payable at different
periods, and as no time is fixed by the will for the payment
of any part, no part of it became payable until the expira-
tion of one year after probate. *Rev. 581 § 1; Church at Acquack-
anonk* v. *Ackerman, Sax. 40; Brinkerhoff* v. *Marselis, 4 Zab.
680; Halsted* v. *Meeker, 3 C. E. Gr. 136; Hennion* v. *Jacobus,
12 C. E. Gr. 28.* There is nothing in the nature of the gift
to show that the testator intended any part of it should be
payable earlier than the time designated by law; there is
certainly no more evidence of such an intention, than there

---

ing it optional with the stockholders to take stock in the new bank
with such dividend, or to take it in cash. The trustee took the
stock.—*Held,* that so much of the eighteen per cent. as represented
the old capital, belonged to the remainder.

In *Woodruff's Case, 1 Tuck. 58,* after a gift of a life estate in a
residuum to a widow (in lieu of dower), with remainder over, a cor-
poration in which testator held stock, two days after his death was
authorized to double its capital. The new stock was apportioned
among the old stockholders, and an extra dividend of $18 per share
out of the surplus profits declared, to be credited on the subscriptions
to the new stock.—*Held,* that the new stock subscribed for by the
executor, to the extent of $18 per share, belonged to the widow.

In *Willbank's Appeal, 64 Pa. St. 256,* after a trust, composed partly of
stocks, to pay $1,400 annually from the income of testator's estate to
his daughter, and the remainder to his son, had been given, one cor-
poration, whose stock was valued at $100 at par. increased its capital,

Van Blarcom *v.* Dager.

would have been had the testator given the interest or income of a specified portion of his estate.   *Halsted* v. *Meeker's ex'r* and *Hennion's ex'r* v. *Jacobus*, are direct authorities that, had the gift been in that form, no interest or income would have accrued until the expiration of a year after probate.

Third—The premium received on the sale of the gold, as well as all other accretions, additions and profits, accruing during the year immediately subsequent to the probate of the will, constituted part of the principal fund, and did not pass to the widow as income.   *Van Doren* v. *Olden, 4 C. E. Gr. 176.*

Fourth—The representatives of the widow must account for the premium actually received on the sale of the gold, and not for what might have been received had it been sold at a later day.

A decree, drawn in conformity to these conclusions, will be advised.

From this decree the appeal was brought.

*Mr. Thomas M. Moore*, for appellants.

I. (1) The decree prevents the widow from receiving any of the first year's income—not even the interest accruing during that year on any investments of the principal of the estate can be allowed her.   The widow is entitled to the

---

allotting to each stockholder forty per cent. in stock, upon the payment of $75 per share.   The trustee sold this privilege for about $20 per share, carrying the proceeds to the capital fund of his trust. Another corporation increased its capital on nearly similar terms, and the trustee subscribed to the new stock, and afterwards sold the stock at a profit of $400, which he also carried to the corpus.—*Held*, that both items were income.   Contra, *Atkins* v. *Albree, 12 Allen 359.*

In *Emery* v. *Wason, 107 Mass. 507*, a testator, owning shares of stock in a corporation, subscribed for new shares and paid half the price thereof.   He died before the remaining half was payable, and his executors paid it and took the new certificates.   Under a bequest to his son for life of " the income of my stock," with remainder to the son's children.—*Held*, that the new shares passed as capital.   See, also, *Billings* v. *Billings, 110 Mass. 225; Rand* v. *Hubbell, 115 Mass. 461; Lord* v. *Brooks, 52 N. H. 72; Winslow* v. *Haven, Id. 76; Perry on Trusts, §§ 544–546.*—Rep.

income from the death of the testator.   He gives to her the income of all his estate, real and personal.   Unquestionably, she is entitled to the income of the real estate from the testator's death, and it is fair to presume that the testator intended the same rule to govern the income of both estates. He is required to pay the testator's son George, out of the income, one thousand dollars, upon his becoming twenty-one years of age.   If he had reached that age during the first year after the testator's death, the widow could not have then paid him his legacy, except by using the first year's income.

(2) When a testator bequeaths the entire income of his estate to his widow for life, she is entitled to the income accruing from his death.   *2 Redf. on Wills, ch. 4* §§ *6, 31, subd. 11 and 12 ; Perry on Trusts* §§ *548, 551 ; 2 Spence's Eq. Jur. p. 567 ; Green v. Green, 3 Stew. 451.*

(3) Where a specific sum of money is bequeathed, or the interest on a specific sum, without any time of payment being specified, a year's grace is granted by law to the executor within which to make the payment, in the one case, or the investment to produce the interest in the other. No more than this is decided by the New Jersey decisions cited in the vice-chancellor's opinion.

The executor may pay a legacy at any time within the first year, if so disposed, without risk.   *Angerstin v. Martin, Turn. & Russ. 232, cited in note 2 ; 2 Redf. on Wills p. 466 ch. 4 § 31 subd. 1.*

The New York cases, while holding that legacies of specific sums do not draw interest until one year after the testator's death, hold, nevertheless, that where income is bequeathed, it accrues from the testator's death.   *Williamson v. Williamson, 6 Paige 298 ; Cogswell v. Cogswell, 2 Edw. Ch. 231.*

II. At the testator's death gold was at a slight premium. The premium increased until the date of the sale by the executrix of the draft.   The excess of premium was income,

and should have been allowed to her.     *Perry on Trusts* § *545, and note; Van Doren* v. *Olden, 4 C. E. Gr. 176; Ashhurst* v. *Field, 11 C. E. Gr. 11.*

*Mr. A. B. Woodruff,* for respondents.

I. The first ground of appeal is not well founded.     The decree decided, properly, that the legatee for life was entitled only to the income from one year after testator's death. The persons in remainder (the complainants below) were entitled to have the fund brought here and invested under the direction of the court of chancery.     And the court should have held the fund until final distribution to those entitled.     *Holland* v. *Hughes, 16 Ves. 111, 3 Mer. 685; Preston* v. *Melville, 15 Sim. 35.*

The English rule is to take the *value* of the estate, at what it was worth, or would sell for, one year after the testator's death.     *Caldecot* v. *Caldecot, 1 You. & Coll. 312, 737; Turner* v. *Newport, 2 Phill. 14; Sutherland* v. *Cook, 1 Coll. 504, 505, 1 Hare 170.*

The rule in New Jersey is the same.     *Rev. p. 581 § 1; Hennion* v. *Jacobus, 12 C. E. Gr. 28; Halsted* v. *Meeker, 3 C. E. Gr. 140; Church at Acquackanonk* v. *Ackerman, Sax. 43.*

The appellants say that Mrs. Hughes (Weiss) was entitled to the income of the *real* estate from the death of the testator, and, therefore, is entitled to interest on her legacy from the same time.

First—The answer is, there was no real estate.

Second—There is nothing in the will to show any intention in the testator to take her legacy out of the general rule.

The cases cited by the appellants to establish the proposition that " where a testator bequeaths the *entire* income of his estate to his widow for life, she is entitled to the income accruing from his death"—fail to do so. And the books cited admit the *rule* to be as we contend.     One answer

to this is that the "entire" income was not bequeathed to her. Appellants cite *2 Redf. on Wills ch. 4 § 6 subd. 11, 12.* There is no such section in that chapter. Section 6 is in chapter 1, and does not refer to the question. They cite *Perry on Trusts § 548, 551.* Sections 548 and 550 admit the rule to be as we contend. Section 551 refers to cases of real estate, and cases which turned on the *language* of the will, and *intention* of the testator. The cases cited in clause 7 of section 551, to wit, *Llewellyn's Trust, 29 Beav. 171,* and *Meyer v. Simonson, 5 DeG. & Sm. 723,* show that the rule allowing a certain per cent. interest from testator's death is upon "the value taken at the *expiration* of one year from the testator's death." This being the time which, by the rule we contend for, is fixed by the law for the ascertainment of the amount of the estate, and when all legacies are payable; and, inasmuch as there is nothing in the will to show testator intended that the executrix should pay income to any one, until the time fixed by law to ascertain the amount of the principal fund, that is, one year from testator's death, there is nothing in this case to take this legacy to Mrs. Hughes out of the general rule. The same remarks are a sufficient answer to *2 Spence's Eq. Jur. 567.* They also rely on *Green v. Green, 3 Stew. 451.* Page 457 of this case says: "The rule which gives the executor one year, was made to secure him from embarassment in the settlement of the estate." I submit that this is not the reason of the rule. The reason is, that a definite time should be fixed, at which the amount of the estate is to be ascertained, or fixed—in reference to which the income may be calculated. *2 Redf. on Wills ch. 4 § 31 subd. 1; Perry on Trusts ch. 19 § 575.*

So far as *Green v. Green* decides that a tenant for life of *personalty* is entitled to interest from testator's death, *when no time is fixed by the will for the payment of the legacy,* the case of *Howard v. Francis, 3 Stew. 448,* is a perfect answer. The limitation by *statute (Rev. p. 581 § 1)* may have had for *one* of its objects the protection of the executor from litiga-

Van Blarcom *v.* Dager.

tion for one year, but the whole section shows the legislature comprehended the pre-existing rule, and the proviso in the section shows they understood the difference between cases where a time was *fixed* in the will for the payment of legacies, and those where no time was fixed.

Counsel cites *Angerstin* v. *Martin, Turn. & Russ. 232,* cited in *Redfield on Wills ch. 4 § 31 subd. 1 note 2,* and some New York cases, for the purpose of making a distinction between interest on legacies and income. There is no such distinction. The chancellor, in *Howard* v. *Francis, 3 Stew. 448,* cites the case of *Williamson* v. *Williamson, 6 Paige 298,* and holds that the widow could have " interest only according to the common rule, notwithstanding the fact that the legatee was, *at the testator's death, dowable of lands of which he died seized.*"

II. The second ground of appeal is not well founded. Catharine Weiss was not entitled to the premium she received on the sale of the gold she brought, as executrix, from Russia to this country. Such premium was not income—that is, annual earnings—it was a mere change in the form of the corpus of the fund. It was simply changing one kind of currency for another. It still remained the principal of the fund from which she was to receive income. In *Dimes* v. *Scott, 4 Russ. 195,* a part of the interest was added to the corpus. In *Taylor* v. *Clark, 1 Hare 161,* the rule is well stated by Vice-Chancellor Wigram. In *Wray* v. *Smith, 14 Sim. 202,* it is said that a sale is simply a conversion of the corpus from one form into another. *Mackie* v. *Mackie, 5 Hare 70; Sparling* v. *Parker, 9 Beav. 524; Gibson* v. *Bott, 7 Ves. 89; Fearns* v. *Young, 9 Ves. 552; Howe* v. *Lord Dartmouth, 7 Ves. 137a; Crawley* v. *Crawley, 7 Sim. 427; Mills* v. *Mills, 7 Sim. 501; Mousley* v. *Carr, 4 Beav. 49,* are to the same effect. *Phayre* v. *Perce, 3 Dow 128,* a unanimous decision by the house of lords. *Hill on Trustees (ed. of 1846) p. 386–389 ; Valentine* v. *Strong, 20 Md. 522. 2 Story's Eq. Jur. §§ 1273, 1273a, 1274,* maintain the same doctrine.

If she had sold the gold on March 15th, 1862, over six months previously, she would not have sold it for so much. Suppose the gold had been a ship, would that increase in value have been "use" or "income?"    Would it not clearly have been an increase in *value* of the corpus?    Can an increase in the value of a ship, a horse, or a quantity of gold, or a draft, in any sense be called the "income" of or from any of them?    The authorities cited, *Perry on Trusts, 4 C. E. Gr. 176; 11 C. E. Gr. 11*, all refer to the earnings or interest of the *corpus*.

III. It was the duty of the executrix, Catharine Hughes (afterwards Weiss), to have filed a bill in the court of chancery, so soon as she arrived in New Jersey, and placed the fund under the control of that court, and invested and re-invested it under the direction of that court.    Whether or not she was entitled to the income the first year after testator's death, her representatives now make a question. When the gold should have been sold, was a question; on what amount she was entitled to receive income was a question; also, as to how the money should be invested; and she ought to have brought them to the notice of the court, and had them decided.    *Quick* v. *Fisher, 4 Hal. Ch. 674, 778.*    If she made a change in the fund without such direction, the gains belong to the fund, the losses are chargeable to her.    *Quick* v. *Fisher, 1 Stock. 802, 805.*

The cases relied upon from other states, by the appellants, such as *Williamson* v. *Williamson, 6 Paige 306*, that the executor shall *estimate* the value at the testator's death, and pay interest or income on that amount, are contrary to the policy of our law, and opposed to the decisions in this state. Such a doctrine would furnish no *rule*, for there would be no *certainty* as to what debts come against the estate.    That interest, or income, begins to run from one year after the testator's death, has been the rule of this state from the earliest period to the present time.    *Barnes* v. *Danforth, 2 Stew. 12; Howard* v. *Francis, 3 Stew. 444, 448.*

The opinion of the court was delivered by

Dodd, J.

By the will of George W. Hughes, deceased, the income of all his property, personal and real, was given to his wife during the term of her natural life, with a bequest over of the principal at her death. The testator died while in Russia, on the 15th of October, 1862, and his will was subsequently proved by his widow and executrix, before the surrogate of Passaic, in this state. A portion of his property was balances in the hands of bankers in Europe, which balances were represented by a draft on Baring Brothers & Co., in London. This draft, for the sum of over eight thousand pounds sterling, was sold by the executrix, in New York, on the 21st of October, 1862. Its gold value was then and there the sum of $41,227, for which, as there was then a premium on each gold dollar of twenty-seven and one-half per cent., the executrix received, in legal tender money, the sum of $52,573.89.

In this suit now pending for the settlement of the estate, two questions were decided by the vice-chancellor, which are again raised by this appeal: First—Is the premium which was received by the executrix on the gold value of the draft, to be taken as part of the income of the estate, or is it to be taken as a part of the principal fund? Second—Is the income of the estate which was given to the wife, to be reckoned from the death of the testator, or from the expiration of one year thereafter?

It was held by the vice-chancellor, that the premium on the gold was not income, but a part of the principal. In this ruling I entirely concur. The appellants, in resisting it, relied upon the cases of *Van Doren* v. *Olden, 4 C. E. Gr. 176*, and *Ashhurst* v. *Field, 11 C. E. Gr. 11*. These cases do not support the appellant's claim. Trust funds, of which the income, interest or profits were given by a testator to one person for life, and the principal over on the life tenant's death, were there invested in the stock of an incorporated

company.   Extra dividends, in the form of new stock, had
been made by the company, out of the earnings of their
business; and the question was, whether the stock divi-
dends were to be regarded as income or capital.   The
answer to the question was held to turn upon the point
whether the earnings, out of which the dividends had been
declared, had been carried to account of accumulated sur-
plus laid up by the company before or after the investment
was made.   If before the investment, the dividends were
adjudged to be capital and to belong to the remaindermen.
If after the investment, they were income, and belonged to
the tenant for life.   The important circumstances dis-
tinguishing those cases from the present, were the existence
of earnings or profits from the business; and, also, the
declaring of the dividends on the distribution of such profits
by the board of directors.   A mere increase or rise in the
market value of the investment would have been essentially
different, and not to be regarded as income belonging to
the tenant for life.   The difference between the par value
of the gold and its value in legal tender money, is not earn-
ings, but, like the increase in value of the testator's jewelry
or pictures, sold at an advance on their cost, is a part of the
property from which income is to arise.   If, in the draft,
was included interest which had accrued on the testator's
money after his death, such interest should be distinguished
in the accounting from the principal on which it arose.

Second—At what time did the income to the widow
begin to accrue?   It was decreed by the vice-chancellor, to
begin at the expiration of one year from the testator's
death.   To the correctness of the decree in this particular,
I am unable to assent.   It is grounded on the general rule,
that legacies bear interest from the time they are payable,
and upon the statutory provision, that the executor or
administrator shall have a year after probate in which to pay
legacies, where no time for their payment is fixed by the
will.   This general rule has been expressed and applied in
cases adjudged in this state.   *Church at Acquackanonk* v.

*Ackerman's ex'r, Sax. 40 ; Brinkerhoff* v. *Marselis's ex'r, 4 Zab. 680 ; Halsted* v. *Meeker's ex'rs, 3 C. E. Gr. 136 ; Hennion's ex'r* v. *Jacobus, 12 C. E. Gr. 28 ; Howard* v. *Francis, 3 Stew. 444.*

In all these cases, the legacies were specific sums, or the interest of such sums, and differ from bequests of the residuary personal estate made to a legatee for life. This distinction is explained and enforced by the chancellor in the recent case of *Green* v. *Green, 3 Stew. 452,* in which the opinion was delivered after the decision of the present case. The rule that, where the residuary personal estate is given to a legatee for life, the interest thereon accruing from the testator's death, shall, in the absence of any direction to accumulate, go to the tenant for life, is declared, by the chancellor, to be established. It is placed, not on the presumption that the life interest was given for support, but on the equity which seeks, as between the life tenant and the remainderman, to give to each his due. To give the interest for the first year to the remainderman by treating it as part of the principal, is correctly said to be injustice to the tenant for life.

In addition to the authorities cited in the chancellor's opinion, reference may be made to *Perry on Trusts* § *551,* and the accompanying notes. I am of the opinion that the appellants should be allowed the income from the testator's death.

The decree should be reversed.

Decree unanimously reversed.