# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY, AND THE PREROGATIVE COURT,

NOVEMBER TERM, 1893.

---

THOMAS S. HATTERSLEY et al., appellants,

*v.*

EDWARD P. BISSETT et ux. et al., respondents.

---

THOMAS S. HATTERSLEY et al., appellants,

*v.*

JANE ALICE BISSETT and EDWARD P. BISSETT, respondents.

1. A conveyance of land by a parent to one of his children for a consideration named therein, of natural love and affection, or for a nominal consideration, is presumptively an advancement within the meaning of the proviso in the first section of the act regulating the descent of lands. *Rev. p. 297.*

2. Proof that a conveyance by a father to his daughter, by a deed expressed to be for the consideration of one dollar and natural love and affection, was,

in fact, made as compensation for services actually rendered by the daughter in remaining at home, keeping house for him and nursing him for a number of years, overcomes the presumption that the conveyance was a gift or advancement.

3. The testator, by his will, devised a portion of his real estate to his son and other portions to his daughter. After the execution of his will he conveyed to his daughter part of the real estate he had devised to his son. On bill filed by the son to compel the daughter to elect whether she would take under the deed or under the will—*Held*, (1) that the conveyance by the testator, after the execution of his will, of the lands devised to the son, operated as a revocation of the devise to the son; and (2) that the daughter was not under an obligation to make an election between the conveyance to her by the deed and the benefits she derived under the will.

On appeal from a decree advised by Vice-Chancellor Bird, whose opinion is reported in *Hattersley* v. *Bissett, 5 Dick. Ch. Rep. 577.*

*Mr. John H. Backes,* for the appellants.

*Mr. Woodbridge Strong* and *Mr. Alan H. Strong,* for the respondents.

The opinion of the court was delivered by

DEPUE, J.

Charles Hattersley, the testator, died May 5th, 1890, leaving a will made and executed April 16th, 1884. At the time of making the will the deceased was seized in fee of several parcels of land in East New Brunswick, designated on the map as Plots Nos. 2, 3, 4 and 5, and also three lots in the city of Trenton, viz., No. 129 South Broad street and Nos. 201 and 203 Perry street.

By his will the testator devised his property to his four children, as follows: To Elizabeth H. Cherry, No. 129 Broad street, Trenton, in fee, and the westerly part of Block No. 5, in East Brunswick, for life; to Jane A. Hattersley (now Mrs. Bissett), the easterly half of the said Block No. 5 and the remainder in the other part after the death of Mrs. Cherry, in

fee; to Thomas S. Hattersley, No. 203 Perry street, Trenton, and Plots Nos. 2, 3 and 4, in East Brunswick, and to Charles M. Hattersley, No. 201 Perry street. By the residuary clause in his will, the testator devised and bequeathed the residue of his estate to his two daughters, Mrs. Cherry and Mrs. Bissett, their heirs and assigns, to be equally divided between them.

Mrs. Cherry died May 4th, 1884, in the lifetime of the testator, without issue, and therefore, in the devolution of title under the will, No. 129 Broad street, which had been devised to her in fee, fell into the residue. But inasmuch as, by the residuary clause in the will, the equal one-half part of the residuary estate was given to Mrs. Cherry, by her death in the testator's lifetime, he died intestate with respect to the equal undivided one-half part of the Broad street property, which descended to his three surviving children as his heirs-at-law.

By a deed of conveyance duly executed, and acknowledged and delivered by the testator, bearing date October 17th, 1888, he conveyed to Mrs. Bissett, in fee, all the East Brunswick property. This conveyance comprised, in addition to Block No. 5, which Mrs. Bissett took by the will, Blocks Nos. 2, 3 and 4, which, by the will, were devised to Thomas.

Mrs. Bissett claims all the East Brunswick property under the deed of conveyance, and one undivided half part of the Broad street property under the residuary clause of the will, and also the undivided one-third part of the other half of the Broad street property, as one of the heirs-at-law of the testator.

In this situation of the title of the parties respectively, Thomas S. Hattersley filed in the court of chancery two bills of complaint, to each of which Mrs. Bissett was made a party.

The first of these bills was filed for the partition of No. 129 Broad street, in the city of Trenton, which, by the testator's will, was devised to Mrs. Cherry in fee.

The bill as amended charges that the lands conveyed to Mrs. Bissett by the deed made to her by the testator of the date of the 17th of October, 1888, were an advancement and were of greater value than the value of an equal undivided one-half part of the premises whereof the said testator died intestate, and

that, by reason thereof, the said Jane A. Bissett is not, as one of the heirs-at-law, entitled to any share in that part of the premises which descended to his heirs-at-law. The deed on its face purports to have been made for the consideration of one dollar and natural love and affection.

The first section of the act regulating the descent of lands contains the proviso

"that if any such ancestor shall in his lifetime have given or advanced any part of his or her lands, tenements or hereditaments to any of his or her issue, such issue shall not be entitled to any part or share of such ancestor's real estate, descending under or by virtue of this act, unless the real estate so given or advanced shall not be equal in value to the respective shares of the other issue in the same degree of affinity, as the case may be, and then no more than will be sufficient to make such share equal in value to the respective shares of the other issue, in the same degree of consanguinity to the said deceased ancestor." *Rev. p. 297.*

The words in this proviso are "given or advanced." In the statute of distributions the word "advanced" alone is used. *Rev. p. 784 § 146; 22* and *23 Car. II. c. 10 § 5.* In the law of legacies, a legacy is said to be adeemed by an "advancement." In cases of these aspects "advancement" is a term employed to indicate something given in anticipation of what the beneficiary may succeed to by inheritance, succession or gift at the death of the donor, and is presumptively a satisfaction *pro tanto* or in the whole of such ulterior benefits. This presumption is liable to be fortified or rebutted by extraneous evidence. *2 Tayl. Ev. § 1227; 2 Rop. Leg. 401, 404; 2 Wms. Ex. 1501, 1504; 2 Lead. Cas. Eq. (6th ed.) 398, 401, 402; Fowkes* v. *Pasco, L. R. 10 Ch. 343; S. C., Brett Lead. Cas. 248* and notes *pp. 250, 251, 252; Lord Chichester* v. *Coventry, L. R. 2 Eng. & I. App. 71; Tussaud* v. *Tussaud, 9 Ch. Div. 363, 378; Sims* v. *Sims, 2 Stock. 158, 163; Peer* v. *Peer, 3 Stock. 432; Speer* v. *Speer, 2 McCart. 240, 249; Van Houten* v. *Post, 6 Stew. Eq. 344, 346, 347.* Whether a gift by a testator or intestate in his lifetime to a legatee or distributee is an advancement being a question of intention, must be open to discussion and consideration upon extrinsic evidence.

A conveyance of lands by a parent to one of his children for a consideration named therein of natural love and affection, or for a nominal consideration, is an advancement within the meaning of the proviso in the first section of the act regulating the descent of lands, unless a contrary intention be made to appear. *Den* v. *McPeake, 1 Penn. 211; Garden* v. *Buckelew, 2 Halst. Ch. 94.* And although the deed purports to be made for a valuable consideration; the acknowledgment of the receipt of such a consideration is only *prima facie* evidence and may be rebutted by extrinsic evidence. *Speer* v. *Speer, 1 McCart. 240.* The question, as was said by Chancellor Green in *Speer* v. *Speer*, is one of intent, and the presumption that the conveyance was by way of a gift or advancement may be overcome by proof.

The evidence in this case shows that Mrs. Bissett was born in 1849; her mother died in 1865; and the deceased remained a widower until his death, in 1890, within one month of attaining the age of eighty-four years. It also appears that after Mrs. Bissett returned from school she became housekeeper for her father, with her sister doing the housework and nursing her father. Mrs. Cherry died in May, 1884, shortly after the will was made. From that time Mrs. Bissett was the sole housekeeper. The deed was made in 1888. The evidence is that during the last six years of the testator's life, which would extend back very nearly to the date of the will, he told her that he would remunerate her well for all she had done and was doing for him. The conveyance contained a reservation of a life estate in the testator. The lots, two, three and four, which Mrs. Bissett took under the deed exclusively, were, with other lands of the testator, subject to a mortgage for $6,000, and the conveyance was made expressly subject to the encumbrance of the mortgage. The value of these lots above the mortgage debt which was charged upon them does not appear.

It fully appears by the evidence that the testator intended to make Mrs. Bissett compensation for her services; that originally he proposed to do this by a codicil to his will, and that he afterwards resolved to make the deed in place of an alteration of his will, and that he intended that she should have the property con-

veyed to her, in addition to what he had given her by the will, in consideration of the services she had rendered. The testimony on this subject is referred to by the vice-chancellor in his opinion. It would be superfluous to repeat it here. It is sufficient to say that the proof is plenary and conclusive that the testator did not intend by this conveyance to make a gift or advancement to Mrs. Bissett, and that his intention in making the conveyance was to make compensation to her for her services over and above the gifts to her by the will. The decision of the vice-chancellor that the conveyance was not a gift or advancement was correct.

The object of the second bill filed by the complainant was to compel Mrs. Bissett to make an election. By the will Plots Nos. 2, 3 and 4 in East Brunswick were devised to the complainant. These lots were included in the deed of conveyance made by the testator to Mrs. Bissett.

The prayer of the bill is that the said Mrs. Bissett elect under which instrument, to wit, the said last will and testament, or the said deed of conveyance, to hold the said estate and the property therein bequeathed, devised and conveyed respectively; and in case she elects to hold under the said last will the property therein devised and bequeathed to her, that she surrender up to be canceled the said deed; and in case she elects to hold under the said deed the said property therein granted and conveyed to her, that she surrender to the complainant all of the property so devised and bequeathed to her by the said last will, or make compensation to the complainant out of the estate devised and bequeathed to her by the said last will, in addition to the property set forth in the said deed, to an amount equal in value to the said estate devised to him.

Election is defined by Mr. Justice Story as "the obligation imposed upon a party to choose between two inconsistent rights or claims, in cases where there is a clear intention of the person from whom he derives one that he should not enjoy both." *2 Story Eq. Jur.* § *1075.* The principle on which this doctrine rests is that, for the donee to accept the benefit conferred, while he declines the burden imposed, is to defraud the designs of the

donor. *2 Story Eq. Jur.* § *1077.* The illustration of this doctrine, which is pertinent to the subject under discussion in this case, is where A by his will gives to B property which belongs to C, and by the same instrument gives to C other property which belongs to the testator, in such a case a court of equity will put C to an election to take under the will and give effect to all its provisions, or, if he choose to stand upon his property rights against the testator's disposition, equity will compel him to make compensation to the other beneficiary to the extent of indemnifying the latter for the loss he sustains by such election, not exceeding, however, the benefits the former receives under such testamentary disposition. *1 Jarm. Wills (4th ed.) 443, 445;* *1 Pom. Eq. Jur.* §§ *462, 464, 468,* and notes.

The plots Nos. 2, 3 and 4 in East Brunswick, devised to the complainant, being included in the deed of conveyance to Mrs. Bissett, if the deed to her had been made before the testator's will was executed the case would clearly have been a case for an election.

But the deed of conveyance to Mrs. Bissett was made after the execution of the testator's will.

By the common law an absolute conveyance of lands which were specifically devised, made after the execution of the will, operated as a revocation of the devise, for in such case the devisor does not die seized, and his alienation after making the devise is conclusive evidence of a change of intention with regard to such testamentary disposition. *6 Cruise Dig. 93* § *59.* So inflexible was this rule of the common law, that if the testator subsequently aliened lands devised and afterwards acquired a new freehold estate in the same lands, such newly-acquired estate would not pass by the devise. *1 Jarm. Wills 147; 4 Kent Com. 529, 530.* In the latter respect the law has been changed in England by the statute *1 Vict. c. 26* §§ *23, 24,* and in this state by section 3 of the Wills act of March 12th, 1851, the effect of which is to make a general or specific devise of lands operative to include lands acquired subsequent to the making of the will. *Rev. p. 1248.* Except as modified by statute, the common-law rule is in force and rests upon the prin-

ciple that the subsequent alienation of the property devised evinces a change of mind on the part of the testator, and is therefore a revocation of the devise; or, to speak with more accuracy, the testator having aliened the lands in his lifetime, has not at his death any estate therein to pass to the devisee by his will. To adopt the language of Lord Hardwicke, the conveyance after the making of the will "is a revocation, because the estate is gone and the will has lost the subject of its operation." *Sparrow* v. *Hardcastle, 7 T. R. 416,* note.

In *Thompson* v. *Thompson, 2 Strobh. L. 48,* the testator by his will devised the premises in question to the plaintiff. Subsequently he conveyed the same premises to the defendant by deed. The testator's will contained other legacies and devises to the defendant, which he had accepted. The contention was that the defendant was under an obligation to elect between the benefits given by the will and his title under the deed. The court held otherwise. The learned judge, in delivering the opinion of the court, said: "When the testator gives his own estate to one person, and the estate of that person to another, the intention is manifest that the second devisee shall have the estate of the first, and that intention creates a condition that the first devisee shall not take the estate given to him, unless he relinquish his own estate to the person to whom the testator has devised it. If, in this case, the testator had first conveyed the plantation to the defendant, and afterwards devised it to the plaintiff, the defendant could not take by the conveyance without defeating the devise to the plaintiff. To take his own estate by the deed, and, in addition, claim what was given by the will, would be against the intention of the testator, and the defendant would be put to an election either to take under the deed and relinquish his claim under the will, or to take under the will and relinquish to the devisee the plantation claimed by the deed. But the conveyance to the defendant was made after the date of the last codicil, and long after the date of the will. The testator thereby gave him the plantation, in addition to what was given by the will. By the conveyance to the defendant the devise to the plaintiff was revoked, with the same effect as if the plantation had been de-

vised to the defendant by a codicil. It was the intention of the testator that the defendant should take both under the deed and under the will; and there is no subject for election."

During the lifetime of the testator his property and the disposition he should make of it were subjects entirely within his own control and at his discretion. By his will he intended that Mrs. Bissett should at his death have the property therein devised and bequeathed to her. By the deed of conveyance subsequently made to her for other property not given to her by the will, he intended that she should have the property conveyed to her in addition to the devises and bequests to her contained in the will. The testator intended that she should enjoy the benefits conferred on her by both instruments. To compel her to renounce the benefits derived under either would defeat the plainly-expressed intentions of the testator.

The decree in both cases should be affirmed.

*For affirmance* — THE CHIEF-JUSTICE, ABBETT, DEPUE, DIXON, GARRISON, LIPPINCOTT, REED, BOGERT, PHELPS—9.

*For reversal*—None.