ALEXANDER KANOUSE AND EDWARD D. NEIGHBOUR, RE-
SPONDENTS, v. THE CENTRAL RAILROAD COMPANY
OF NEW JERSEY, APPELLANT.

Argued November 23, 1921—Decided March 6, 1922.

Decedent devised a part of her homestead farm to her son. She then
devised to another son, now deceased, to his children, the re-
mainder of her homestead farm "as hereinafter described." Then
followed a description which was not complete and which could
not be plotted out, due to the uncertainty of courses, described as
running along Lake Hopatcong. *Held,* that the devise included
all of the remainder of the homestead farm, as to hold otherwise
would in effect decide that she died intestate as to a portion of
her lands.

On appeal from the Supreme Court.

For the appellant, *Maximilian T. Rosenberg.*

For the respondents, *King & Vogt.*

The opinion of the court was delivered by

SWAYZE, J.  This is an action of ejectment.  Both parties
claim under the will of Temperance J. Nolan, proved in 1864.
She devised a part of her homestead farm at Nolans Point,
Lake Hopatcong, to her son Abraham S. Nolan, and as to this
there is no question.  There is a description by metes and
bounds.

She then gives and bequeaths to her son Nathan Nolan, now
deceased, to his children, the remainder of her homestead
farm "as hereinafter described."  She describes it for five
courses by metes and bounds, the last courses being "north
fifty-five degrees west, eleven chains to the edge of the pond;
thence by the same the several courses thereof to the begin-
ning."  This beginning, also, is described in the will as a
stake standing at the edge of the great pond.  The pond re-
ferred to is Lake Hopatcong, the largest lake in the state.
This description by metes and bounds and the courses of the

pond does not cover the whole remainder of her homestead farm, and it is said therefore that the devise must be limited by the courses and distances specifically set forth in the will. The description of the land as the homestead farm, it is argued, must be limited by the words "as hereinafter described," and reliance is had upon *Griscom* v. *Evans,* 40 *N. J. L.* 402; *affirmed,* 42 *Id.* 579. But the difficulty in that case was that the two descriptions were conflicting. "The description of all the farm by name," said Chief Justice Beasley, "incontestably designated the whole by such farm so that the first description called for the entire thing and the second description for only a part of such entire thing. The two descriptions were therefore irreconcilable and the latter was properly rejected."

In this case the very first question is, Are the two irreconcilable? On their face they purport to be identical. What is there to suggest that they are not so? The description of the land devised as "the remainder of my homestead farm" is accurate and complete. The specific metes and bounds are not complete. They do not enable us to plot the farm because the fifth and all the subsequent courses are referred to Lake Hopatcong as a monument, and Lake Hopatcong is as much a wandering waste as the sea. We must know whether the fifth course, by the words "edge of the pond," means high-water mark or low-water mark, for that affects the location of all the subsequent courses. Lake Hopatcong, while a large natural lake, has been much enlarged by dams built by the Morris Canal Company, and its rights of flowage increase very much the area of the submerged portion of the lake. The map *P-2* shows lines extending into the lake and all the courses of the will subsequent to the fifth are shown as submerged. The devise surely embraced some land covered with water. How much depended upon the amount of water withdrawn for the use of the canal. This varied in depth from thirty-one and one-half inches to one hundred inches, with the season—that is, sixty-eight and one-half inches difference (substantially six feet), and as the quantity of the water withdrawn increased the area of the exposed land would increase

with it; the dry land might conceivably be exposed up to the most westward line described in the will, as the water near shore is said to be very shallow. The map delineates the west boundary of the will as a line in the water. Such a line, sometimes submerged and sometimes exposed, would be an extraordinary line for the testatrix to make a boundary in dividing her farm. In drawing the present judgment it was thought necessary to fix some other line than the line of the will, and it was convenient no doubt to fix the line as the low-water mark when Lake Hopatcong is in its normal state and condition. But, why low-water mark and why the time when Lake Hopatcong was in its normal state and condition, and what is its normal state and condition? And, is the edge of the pond at the end of course 5 at low water or high water or normal water? The court undertook to justify the line lakeward and landward, which was actually adopted, but that required evidence *aliunde* the will, and such evidence is not permissible. *Griscom* v. *Evans, supra*. There is nothing on which to base these lines as against language of the will that is perfectly plain. We think nothing could be plainer than for Mrs. Nolan to devise a piece of land by metes and bounds to one son and then devise all the rest of her homestead farm to the other son, and we do not see how the construction of the words "the remainder of my homestead farm," can be shaken by a guess at a description of a line written in water. The words "as hereinafter described" are not enough because they are uncertain and indefinite. They seem to have been a mere trick of style of the conveyancer, for he uses the same language in describing the portion of the homestead farm which the testatrix devises to Abraham; the only difference being that in the case of Abraham she changes "hereafter" for "hereinafter."

The case is entirely different from Griscom *v.* Evans, inasmuch as part of the land therein claimed came from a different source of title and was not included in both descriptions. The intention of a testator is not to be determined in a mechanical way by hard and fast rules; it must be determined

by a consideration of the whole document and the facts of the case. Tried by that rule the plaintiff fails. One of the soundest rules of construction is that no testator shall be presumed to die intestate. When Mrs. Nolan sat down to make her will she undoubtedly meant to dispose of her whole property, and when she said she gave so much to Abraham and the remainder to Nathan's children, she undoubtedly thought she had disposed of the whole of it. There is no reason that would justify us in holding that she died intestate as to the area covered, or that might be covered, with water west of the line fixed in her will rather than to hold that she intended to devise her whole farm after deducting the part devised to Abraham. The difficulty is heightened by the fact that she does not say whether she meant low water or high water, nor does she say she meant the height should be taken at a normal time or at an abnormal time. All is uncertain. It may be that the line she described in her will was a line near enough to the shore to be unaffected by variations in the height of the water if that were possible. She, of course, knew that she had executed the flowage deed and that the canal company had the right to flow the land with water up to the height fixed, and when she drew the line in the will she probably drew it with reference to where it would come under the flowage deed, but not for purposes of a conveyance. She may well have thought that as the lines were in the water a boundary in the water would extend to the centre of the lake. *Hardin* v. *Jordan*, 140 *U. S.* 371. But it is not for us to speculate. We can see nothing in the case to lead us to think that she supposed there was any contradiction between the line of the will and the line of the water, and surely nothing to lead us to suppose she meant to die intestate when she had taken pains to make a will.

The learned trial judge was in error; the testatrix meant exactly what she said when she gave the children of Nathan the remainder of her homestead farm.

The judgment must be reversed, with costs, to the end that the record be remitted for a new trial.

BLACK, J. (dissenting). I regret in this case I am not in accord with the view entertained by a majority of the court. The controversy involves the construction of one of the clauses of the will of Temperance Nolan. It affects a part of the homestead farm of some eighty-three acres of land at Lake Hopatcong, in Jefferson township, Morris county. The item of the will involved in the suit is the gift in the second clause to the children of the testatrix's deceased son, Nathan, as follows: "I give and bequeath unto my son Nathan Nolan, now deceased, to his children, the remainder of my said homestead farm as hereinafter described, that is to say: beginning at a stake," &c., and then follows a description by metes and bounds. This clause of the will was construed by Vice Chancellor Van Fleet in the case of *Kanouse* v. *Stockbower*, 48 *N. J. Eq.* 42, 44. The construction placed upon this clause of the will by the Vice Chancellor in a lucid opinion seems to me to be sound and satisfying. As there stated, the thing the testatrix gave, to repeat the words of the will, is, "the remainder of my homestead farm as *hereinafter described.*" The description of the thing intended to be given is single, simple and definite. The intention of the testatrix is manifest from the words of the will. Then, in such a case, the functions of the court are to ascertain the intention of the testatrix from the language of the will. *Griscom* v. *Evans,* 40 *N. J. L.* 402; *affirmed,* 42 *Id.* 579.

It seems to me the view entertained by the majority of the court defeats the testatrix's expressed intention, as manifest from the words of the will, by including more land than is described in the will.

Judge White authorizes me to say that he is in accord with the above.

*For affirmance*—BLACK, WHITE, JJ. 2.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, PARKER, BERGEN, MINTURN, KALISCH, KATZENBACH, HEPPENHEIMER, WILLIAMS, GARDNER, VAN BUSKIRK, JJ. 12.