Louis Gertwagen died December 26th, 1932, leaving a last will and testament executed by him on March 23d 1928, the eighth paragraph of which reads:
"Eighth: To my beloved wife, Minnie Gertwagen, I give, devise and bequeath a life interest in all the real estate of which I may *Page 429 
die seized and upon her death all of said real estate, I give, devise and bequeath to my sister, Rebecca Schwartz, wife of Osias Schwartz, of Newark, N.J., my sister Rose Finkelstein who resides in Chicago, my sister Sophie Julius, who resides in Chicago, and to my nephew Harry Gertwagon of Newark, New Jersey, in equal shares to them and their heirs forever."
At the date of the execution of the will and for sometime prior thereto, he was the owner of premises 219 Waverly avenue, and 537 Hunterdon street, Newark. On May 22d 1929, Gertwagen conveyed the premises to Gertwagen Realty Corporation, and became the holder of all the shares of stock in the corporation. The real estate conveyed to the company was its only asset.
The bill of complaint is brought by Rose Finkelstein and Sophie Julius, the sisters and devisees named in the will. They charge that the decedent was the owner of said properties and was seized of same in fee at the time of his death; that the corporation was a fiction since the decedent owned all the shares of stock, and during his lifetime continued to manage the properties; maintained no corporate books or bank account, and corporate meetings were not held. They pray decree that the Gertwagen Realty Corporation held the naked legal title to the lands and premises so conveyed for the benefit of Gertwagen, and that complainants be decreed to be the owners in fee of said property by virtue of the devise, and that the corporation be decreed to make conveyance to complainants for the said premises.
Minnie Gertwagen mentioned in the will as the wife of the testator died December 20th, 1928. Later, he married his present wife, who is likewise named Minnie Gertwagen.
By the common law an absolute conveyance of lands which were specifically devised, made after the execution of the will, operated as a revocation of the devise, for in such case the devisor does not die seized, and his alienation after making the devise is conclusive evidence of a change of intention with regard to such testamentary disposition. 6 Cruise Dig. 93 §59. So inflexible was this rule of the common law, that if the testator subsequently aliened lands devised and afterwards acquired a new freehold estate in the same lands, such newly *Page 430 
acquired estate would not pass by the devise. 1 Jarm. Wills 147;4 Kent Com. 529, 530. In the latter respect the law has been changed in England by statute (1 Vict. ch. 26 §§ 23, 24) and in this state by section 26 of wills. 4 Comp. Stat. p. 5870.
Except as modified by statute, the common law rule is in force and rests upon the principle that the subsequent alienation of the property devised evinces a change of mind on the part of the testator, and is therefore a revocation of the devise; or in other words, the testator having aliened the lands in his lifetime, has not at his death any estate therein to pass to the devisee by his will.
The distinctive characteristic of a specific legacy is its liability to ademption. If the identical thing bequeathed is not in existence, or has been disposed of so that it does not form a part of the testator's estate, at the time of his death, the legacy is extinguished or adeemed and the legatee's rights are gone. The rule is universal that in order to make a specific legacy effective the property bequeathed must be in existence and owned by the testator at the time of his death. 28 R.C.L. 345.
To make a devise of land effectual, the testator must not only be actually seized thereof, but continue seized to the time of his death (28 R.C.L. 347), it being essential to the validity of a devise of freehold lands that the testator should be seized thereof at the making of the will and continue so seized without interruption until his decease. When the conveyance subsequent to the devise, though made for a partial purpose, embraced the entire fee-simple or the whole estate of freehold which was the subject of the devise, the rule under the old law was that the conveyance, though limited in its purpose, and though it instantly revested the estate in the testator, produced a total revocation of the devise. 1 Jarm. Wills 148.
The testator in the paragraph of his will under consideration devised and bequeathed "all the real estate of which I may die seized." By this language he recognized a well established principle of law that a will is to be regarded as ambulatory until the death of the testator, and that it speaks with reference to that time, and can only operate on things as they exist at the time of his death. The fact that the testator did *Page 431 
not die seized of any lands and premises, so far as the testimony before me shows, and that he alienated all of the lands and premises of which he was possessed to the defendant corporation after the making of his will, is conclusive evidence of a change of intention by him with regard to the testamentry disposition indicated by his will. Hattersley v. Bissett, 51 N.J. Eq. 597;Heinen v. Stubenrauch, 106 N.J. Eq. 300.
The complainants contend that the testator did not sell the land in the ordinary sense of the word. They admit that if there had been a sale by the testator in his lifetime then the revocation of the specific devises would be complete. It is their insistment that the corporation was formed simply as a repository for the title to decedent's real estate which after the making of the deed he continued to deal with as his own. Concisely they argue that the intention of decedent in the making of the conveyance is to be gathered from the admitted fact that he owned all the stock in the corporation and exercised personal control over the property; that there were no meetings of the corporation held and no bank account maintained in the corporate name; and that the testator continued to deal with the property as to rents, income, expenses and management as his own, and that after the conveyance, the corporation never functioned as evidence of intention on the part of the decedent that the devises had not been revoked.
In Jackson v. Hooper, 76 N.J. Eq. 592, two individuals purchased all the stock of a corporation under an agreement that they should be partners with equal voice and control in the management, and that the corporation should be treated as a mere agency in carrying out the co-partnership agreement, and all corporate forms ignored, and this having been done for a time, the parties disagreed. It was held that a court of equity has no power to take the corporate property into its control, as upon the dissolution of a partnership, and that the rights of the parties must be administered as shareholders in the corporation, and not as partners. It was the claim that as the owners of all the stock in the corporation were really co-partners, doing business in corporate form for their own convenience, and directors' and stockholders' meetings were seldom held and the business of the corporation *Page 432 
informally and loosely conducted, the corporation being one of those so-called "close corporations" in which all the stock was held by a few persons, that a court of equity has the power to control the property and affairs of the corporation even to the extent of eliminating the corporate functions and powers as mere incidents and wholly disregarding the substantive law governing the creation, supervision and dissolution of corporations. Our court of errors and appeals refused to subscribe to any such doctrine holding "it is fundamental that, no matter how the shares of stock are held, the corporation itself is an entity wholly separate and distinct from the individuals who compose and control it * * *. If they adopt the corporate form, with the corporate shield extended over them to protect them against personal liability, they cease to be partners and have only the rights, duties and obligations of stockholders. * * *. Furthermore, upon grounds of public policy, the doctrine contended for cannot be tolerated as it renders nugatory and void the authority of the legislature — a co-ordinate branch of the government — established by the constitution in respect to the creation, supervision and winding up of corporations."
Complainants urge Fidelity Union Trust Co. v. Roest,113 N.J. Eq. 368, in support of their contention that the corporation holds the mere naked title, and complainants by virtue of the will are the equitable owners of the property. The cited case bears no analogy. There, the testator devised property to his son after he had conveyed the property to the corporation in which he held all the stock. We held that the corporate fiction may not be disregarded so that the legal title to the property would pass by the will, but that this would not prevent effectuating the testator's intention as expressed in the will, the means for so doing having been supplied by the testator, all the corporate stock being in the hands of the trustee. We found that it not only had the power to comply under the circumstances, but that it was its obligation to adjust itself to meet the plainly given directions of its creator.
 The bill of complaint will be dismissed. *Page 433