66 N.J. Super. 199 (1961)
168 A.2d 677
FIRST CAMDEN NATIONAL BANK AND TRUST COMPANY, TRUSTEE OF THE TRUST CREATED UNDER THE WILL OF GRACE L. BROADBENT, DECEASED, PLAINTIFF,
v.
CHERIE BROADBENT, LINDSEY BROADBENT, JOAN MAHER, CHARLES MAHER, JR., JAMES MAHER, BARBARA MAHER, WILLIAM MAHER AND PATRICIA MAHER, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided March 9, 1961.
*201 Messrs. Archer, Greiner, Hunter & Read, attorneys for plaintiff (Mr. Thomas N. Bantivoglio, appearing).
Mr. Walter S. Jeffries, Jr., guardian ad litem for infant defendants.
WICK, J.S.C.
The plaintiff trustee has brought this action for the construction of certain provisions of the will of Grace L. Broadbent, deceased. The defendants are the life beneficiaries of such provisions, who are not represented in this action, and the minor remaindermen who are represented by a guardian ad litem. Both counsel take similar positions in regard to the first three constructions but differ as to the fourth.
Grace L. Broadbent, a resident of Brigantine, New Jersey, died testate on November 20, 1956. Her will dated August 1956 was admitted to probate by order of the Atlantic County Court, Probate Division, on April 24, 1958. The will, obviously drawn by an unschooled layman, provided in part:
"3rd The property known as Beachcomber Brigantine, N.J. I devise to be kept intact until such time as it can be sold at a reasonable price  the income to be divided between Cherie Broadbent *202 and Linsey [sic] Broadbent. If and when it is mutually agreed to sell  the money be invested in government bonds and held as a trust fund for Cherie as long as she remains unmarried * * *"
The testatrix, at the time the will was executed and at her death, owned a motel located at 1424 West Brigantine Avenue, Brigantine, New Jersey, which was known as the "Beachcomber." Prior to the date of her will the testatrix had signed an agreement for the purchase of two lots adjacent to the motel property to be used in connection with the motel. Title to these lots was to pass when the price, payable in installments, was fully paid. Nine months before the final installment was paid the testatrix died. On April 4, 1959 the motel and the two lots, separately valued, were conveyed by the plaintiff trustee. The plaintiff trustee, desiring to dispose of the money received for the two lots, seeks to determine in this action whether the devise of the "Beachcomber Brigantine, N.J." includes these two lots.
The primary concern of the court in construction of wills is to determine the intention of the testator from the words of the will, aided by the circumstances existing at time of the will's execution. In re Fox, 4 N.J. 587 (1950); In re Armour, 11 N.J. 257 (1953); Bank of New York v. Black, 26 N.J. 276 (1958). An important circumstance to be considered here is that the will being construed obviously was not drawn by one who was learned in the law. See Wunderlich v. Bleyle, 96 N.J. Eq. 135 (Ch. 1924); Crocker v. Crocker, 112 N.J. Eq. 203 (Ch. 1933); Brooks v. Goff, 127 N.J. Eq. 115 (Ch. 1940), wherein such a factor was considered.
This court, upon applying the general principles of will construction, must reach the conclusion that these two additional lots are included in the designation "Beachcomber Brigantine." Under the doctrine of equitable conversion, the fact that the testatrix had not been vested with legal title to the lots at her death becomes irrelevant. The doctrine of equitable conversion converts the interest of one *203 who dies after having entered into an enforceable contract to purchase realty, into realty. Since the testator had entered into such an agreement in regard to these lots, her interest in the lots must, upon her death, pass as realty to her devisees. See 7 New Jersey Practice (Clapp, Wills and Administration), sec. 903; Haughtwout v. Murphy, 22 N.J. Eq. 531 (E. & A. 1871).
Although the lots would be considered to have been acquired by the testatrix upon her death under the doctrine of equitable conversion, they would still pass by a general devise of realty under her will. N.J.S. 3A:3-9 provides as follows:
"Real property acquired by a testator after making his will shall pass by any general or special devise * * * sufficient to include such real property, had the same been acquired before the making of the will, unless a contrary intention appear on the face of the will."
By virtue of N.J.S. 3A:3-9, these lots, if included in the designation used by the testator, would pass under such provisions despite the fact they were acquired after the execution of the will. Hattersley v. Bissett, 51 N.J. Eq. 597 (E. & A. 1893); Henderson v. Henderson, 77 N.J. Eq. 317 (Ch. 1910).
In determining the meaning of the designation "the property known as Beachcomber Brigantine, N.J.," several facts must be considered. These two lots were acquired for use in the motel operations. There was no other use made of these lots, nor were there any facts indicating that the testatrix thought of these lots other than as being part of the motel. Furthermore, she made no other provision in her will for disposing of the lots; therefore, if they do not pass under the "Beachcomber," they must pass as intestate property. A cardinal principle of will construction is the presumption against intestacy. In the construction of doubtful clauses in a will, the interpretation to be adopted is that which avoids a partial intestacy. Kanouse v. Central R.R. *204 Co., 97 N.J.L. 185 (E. & A. 1922); Guaranty Trust Co. v. Catholic, etc., N.Y., 141 N.J. Eq. 170 (Ch. 1948); In re Pfizer, 33 N.J. Super. 242 (Ch. Div. 1954). Upon consideration of these factors, the court must reach the conclusion that the words "the property known as Beachcomber, Brigantine, N.J." includes the testatrix's interest in the two lots adjoining the motel property. Only by such a construction are the real intentions of the testatrix effectuated.
The plaintiff trustee also seeks construction of the 4th paragraph, the pertinent provisions of which provide:
"4th The account of stocks and bonds I devise to remain intact Cherie and Lindsey to receive income the losses and gains to be shared by them. I appoint Sam Jemison of Phila as adviser  he will consult with Geo. Pflug Felder of L.A. to make any changes in the account necessary for the security of the account  * * *."
The word "intact" as used by the testatrix has caused ambiguity as to the powers of the plaintiff trustee. The plaintiff trustee submits that the use of the word "intact" does not prohibit the trustee from disposing of the trust assets in part or as a whole, but just requires that the account while held be managed as one trust. The word "intact" apparently has not been construed by the New Jersey courts; therefore the court must look to the common meaning of the word and the context in which it is used. The words of a will should be given their common and ordinary meaning unless there is something in the text which requires that a different meaning be given. See Schaffer v. Oldak, 12 N.J. Super. 80 (Ch. Div. 1951); Supp v. Second National Bank & Trust Co., 98 N.J. Eq. 242 (Ch. 1925). Although Webster's Unabridged International Dictionary defines "intact" to mean "untouched" or "left complete," an examination of the context in which it is used shows that the testatrix did not use it in so strict a sense as only to permit the trustee to sell the account in one block. The testatrix, by specifically appointing advisors to be consulted in regard *205 to making changes in the security of the account, shows that her intention was that various holdings in the account be sold as the protection of the fund requires. Furthermore, the account itself consists of more than 20 diversified holdings worth a considerable sum. It would be a very difficult task to find a buyer for the whole account in a single sale; thus it would be a most unreasonable construction of this provision to require that these diversified holdings can only be sold in one block. If a will is ambiguous, the most reasonable construction should be given to the will if the court finds no motive for unreasonable construction. Johnson v. Conover, 54 N.J. Eq. 333 (Ch. 1896), affirmed Stillman v. Johnson, 55 N.J. Eq. 592 (E. & A. 1897); Rowe v. Rowe, 113 N.J. Eq. 344 (Ch. 1933); Gluckman v. Roberson, 116 N.J. Eq. 531 (E. & A. 1934). The court can find no motive for an unreasonable construction; therefore, the trustee has the power to dispose of any portion of this account as the protection of the account demands.
Paragraph 4th of the will, quoted above, provides in part, "I appoint Sam Jemison of Phila as adviser  he will consult with Geo. Pflug Felder of L.A. to make any changes in the account necessary for the security of the account  * * *." The plaintiff trustee contends that this appointment should not be binding upon it. The apparent purpose of the testatrix in making these appointments was to provide future protection for the account from loss in value due to market changes. The appointment of the plaintiff, an experienced and financially responsible fiduciary, as trustee by the Superior Court of New Jersey on September 15, 1958, has alleviated any need for independent advice for the protection of this account. It has been recognized that the enforcement of a direction by the testatrix to the trustee to employ a designated person in the administration of the trust will only serve to impede the trustee in his duties as trustee. 2 Scott, Trusts (2d ed. 1956), sec. 126.3; 6 New Jersey Practice (Clapp, Wills and Administration), sec. 505. Our Supreme Court *206 adopted such reasoning in Carton v. Borden, 8 N.J. 352 (1952). Chief Justice Vanderbilt, speaking for the court, held that it would be against public policy to enforce the testator's directions that a certain law firm be retained as attorney in the administration of his estate and trust. The rationale used to reach that conclusion is that it would be unjust to the trustee to require him to employ, as an attorney, a person in whom he lacks confidence, because the result might well be disastrous to the administration of the trust. The relationship between the trustee and an investment advisor also requires confidence and trust. In view of the alleviation of any need for any independent advice by the appointment of the plaintiff as trustee, and the confidential relationship required between the trustee and any investment advisor, the court is of the opinion that it would likewise be against public policy to require the trustee to secure the advice of the testatrix's appointees in regard to the investment account.
The testatrix in paragraph 4th states in part, "The account of stocks and bonds I devise to remain intact Cherie and Lindsey to receive income the losses and gains to be shared by them." Since the court has above construed the word "intact" as merely requiring that the account be managed as one trust, which the trustee may dispose of either in part or whole as the occasion demands, the meaning of the words "income the losses and gains to be shared by them" must be determined. There is no question that the ordinary income of the account is to be divided equally between Cherie and Lindsey. However, the trustee also contends that the use of the words "losses and gains to be shared by them" refers to capital gains which might be made in the administration of the trust; therefore, the life beneficiaries should also be entitled to share equally in any capital gains. The guardian ad litem for the minor remaindermen has taken a position contrary to the trustee's. This court must agree with the guardian ad litem for the remaindermen; the testator, in using the phrases "losses *207 and gains to be shared by them," did not intend that any capital gains be distributed to the life beneficiaries. That phrase, as used here, merely means that any increase or decrease in the ordinary income shall be borne by the life beneficiaries. The general rule is that, in absence of specific provisions to the contrary, capital gains received by a trustee on sale of securities held by him as trustee are principal. 2 Scott, Trusts (2d ed. 1956), sec. 236.14. Therefore any capital gain received by the plaintiff trustee in the administration of this account must be retained in the account as principal.
Judgment will be signed accordingly.