Green v. Green.

Mr. John Chetwood, for the motion.

Mr. W. J. Magie, contra.

CALEB S. GREEN and others, executors of HENRY W. GREEN, deceased,

*v.*

SUSAN MARY GREEN and others.

1. A testator disposed of the *residuum* of his estate, and afterwards provided, by codicil, that any share that he then was, or thereafter might become entitled to, from the estate of his brother, should be

Green *v.* Green.

taken as part of his residuary estate. By an agreement made in the testator's life-time, between his brother's residuary legatees, widow and next of kin, a certain share of his brother's estate was set off to the testator.—*Held*, that such share was vested, and must be held on the same trusts, etc. as the *residuum*.

2. The will contained express directions that such trustees might keep any part of the trust fund invested in the stocks, etc. left by him and assigned by the executors to them, without liability for loss by depreciation.—*Held*, that this clause includes the stocks, etc. received by the testator on account of his share of his brother's estate.

3. Where the interest on residuary personal estate is given to a legatee for life, without any direction as to accumulation, the interest which accrues thereon within the year next succeeding the testator's death, goes to the legatee for life, although the exact amount of the *residuum* is not then ascertainable, subject, of course, to the prior rights of creditors and legatees; nor is such right affected by the fact that the *residuum* is given to trustees instead of the interest being given directly to the legatee.

Bill by executors for construction of will and directions.

Mr. *Cortlandt Parker*, for the executors.

Mr. *James Wilson*, for Mrs. Blackwell.

Mr. *F. Kingman*, for the guardian *ad litem* of the infant defendant.

THE CHANCELLOR.

By the ninth section of his will, which is dated August 16th, 1871, Henry W. Green directed that all the residue of his estate be divided into three equal parts or shares, and gave one of those parts to his wife and another to his son,

NOTE.—In addition to the authorities referred to by the chancellor, and those in 2 *Rop. on Leg.* 1322, 2 *Redf. on Wills* 570, 2 *Wms. on Ex'rs* 1391 *et seq. notes*, where very many cases may be found, the following citations show in what instances a tenant for life is entitled to interest on his share from the time of the testator's death:

*Minot* v. *Amory*, 2 *Cush.* 377; *Treadwell* v. *Cordis*, 5 *Gray* 341; *Sargent* v. *Sargent*, 103 *Mass.* 297; *Cooke* v. *Meeker*, 42 *Barb.* 533, 36 *N. Y.* 15; *Wil-*

and directed that the other, being his daughter's share, be held in trust for her; and he accordingly, by the tenth section, gave that share to his brother, Caleb S. Green, and his son, Charles E. Green, and to the survivor of them, his executors, administrators and assigns, in trust, as to $20,000 of it, to pay her the interest for life, to her separate use, and, after her decease, to pay the principal, or deliver or divide the securities in which it may be then invested, to or among the persons to whom she may give it or them by her will, or, in case she leaves no will, then to her next of kin, except any husband she may have; and as to the rest of the share, to hold it on the same trust declared in her marriage settlement. By the same section he further provided, declared and directed that it should be lawful for the trustees, their successors and assigns, to hold as part of the trust funds, without being liable for the depreciation of the same in value, any bonds, stocks or securities belonging to his estate, and which might be, by his executors, assigned to the trustees as part of his daughter's distributive share of his estate. By the eleventh section he provided that the share given to his wife should, in the event of her death in his life-time, go to his son. By a codicil, made June 3d, 1875, he states and provides as follows:

"Whereas, since the execution of my said will, some share or portion of the estate of my brother, John C. Green, deceased, has or may become vested in me, now it is my desire, and I do order and direct, that whatever share or portion or sum or sums of money I now am or may hereafter in anywise become entitled to from the estate of my said brother, shall be deemed and taken as part of my residuary estate, and be disposed of in the manner and subject to all the provisions, directions, limitations and appointments mentioned and declared in

liams's Case, 12 N. Y. Leg. Obs. 179; Fish's Case, 19 Abb. Pr. 209; Pierce v. Chamberlain, 41 How. Pr. 501; Lawrence v. Embree, 3 Bradf. 364; Lynch v. Mahoney, 2 Redf. 434; Eyre v. Golding, 5 Binn. 472; Hilyard's Estate, 5 Watts & Serg. 30; Spangler's Estate, 9 Watts & Serg. 130; Bird's Estate, 2 Pars. Eq. 168; Sergeant's Estate, 9 Phila. 346; Beasley v. Knox, 5 Jones Eq. 1; Mc Williams v. Falcon, 6 Jones Eq. 235; Harrison v. Henderson, 7 Heisk. 315.—REP.

and by the ninth, tenth and eleventh sections of my said will of and concerning my residuary estate."

By an agreement made in the life-time of the testator, and after the death of his brother, John C. Green, between the residuary legatees of the latter and his widow and next of kin, it was agreed that the residue of the estate of John C. Green, except goods and chattels and real estate specifically bequeathed and devised, after deducting the costs and expenses of settling the estate and executors' fees and commissions, should be divided into two parts, of which one should go to the residuary legatees of John C. Green, deceased, and the other, after deducting therefrom the pecuniary legacies, should go to the widow and next of kin, one-third to the widow, one-sixth to each of the brothers of John C. Green, and one-sixth to the children of his deceased sister. This agreement was made to prevent litigation, and settle all disputes and controversies relative to the validity and construction of the will and the administration and disposition of the estate.

By their bill, in this cause, the executors of Henry W. Green ask instruction as to whether the stocks and securities which were received by them under the last-mentioned agreement, as and for the share of their testator, of the residue of the estate of John C. Green, deceased, are bequeathed by the will of their testator, and form part of his residuary estate therein mentioned; whether, if the same form part of that residuary estate, and the share of the testator's daughter therein is to be held by them as trustees for her, their duty as executors requires them to sell the securities now held by them, and invest the proceeds on bond and mortgage, state stocks or bonds or government bonds, or whether they may lawfully receive and hold, for the benefit of the trust, one-third of the very stocks and securities held by them as executors, as well those contained in their inventory of the estate of their testator as those received by them from the estate of John C. Green, deceased, as the share of their testator, under the agreement before mentioned.

By the answer of the testator's daughter, Mrs. Blackwell, another question is propounded—whether she is not entitled to interest on her share of the residuary estate of her father from the time of his death.

It is clear, that the money or securities received by the complainants for the interest of their testator, under the before-mentioned agreement, constitute part of his residuary estate. In the first place, his interest acquired under the agreement was a vested one. The agreement, by its terms, provided that, in case of the death of any or either of the persons entitled to a share of the residuary estate of John C. Green, thereunder, the share should be paid to his or her personal representatives. Without this provision the right to such share would, in the event of the death of the person entitled thereto, have passed to his or her personal representatives. On the death of Henry W. Green his share under that agreement constituted part of the estate disposed of by his will. But further, that share is embraced in the terms of the codicil of June 3d, 1875, before mentioned. The testator thereby declares it to be his will that whatever share or portion, or sum or sums of money he then was, or might thereafter in anywise become entitled to from the estate of his brother, John C. Green, should be deemed and taken as part of his residuary estate, and be disposed of in the same manner and be subject to all the provisions, directions, limitations and appointments mentioned and declared in and by the ninth, tenth and eleventh sections of his will of and concerning his residuary estate. It is to be remarked that he does not confine the provision to money or property received or to be received under the will of his brother, but expressly includes whatever share or portion, or sum or sums of money he then was, or thereafter might become in anywise entitled to from his brother's estate. It is equally clear that the executors are at liberty, as trustees of Mrs. Blackwell, to receive and hold for her share of the residuary estate her proportion or share of the very stocks and securities in which the residuary estate is invested. The testa-

tator, by the will, declares that it shall be lawful for the trustees, their successors and assigns, to hold, as part of the trust funds of Mrs. Blackwell, without being liable for the depreciation thereof in value, any bonds, stocks, or securities belonging to his estate which may be, by the executors, assigned to them as part of his daughter's distributive share.   Moreover, by the bill, it appears that the testator's widow and son are willing to accept, for their shares of the residuary estate, a due proportion of the stocks and securities in which that estate is invested, and, on the hearing, the daughter, by her counsel, declared her wish that her share should be received in like manner.

The question of interest, presented by the answer, remains to be considered.   By the will part (to the value of $20,000) of the share of Mrs. Blackwell is to be held in trust for her for life, with remainder to her legatee or legatees, or, if she shall die intestate, then to her next of kin other than any husband she may have.   As to the rest, it is to be held on the trusts declared in the marriage settlement, which are similar to those declared in the will.   The debts of the testator, and the general legacies given by the will, are all paid.   The executors insist that Mrs. Blackwell's share of the residuary estate shall bear interest, not from the death of the testator, but from the expiration of the period of one year from that time.   The rule that where the residuary personal estate is given to the legatee for life, the interest which accrues thereon from the time of the death of the testator shall, in the absence of any direction to accumulate, go to the life tenant, is established.   It does not rest on the presumption that the life interest was given for support, but on the equity which seeks to give to each (the life tenant and the remainderman) his due.   If the distribution, or payment, or delivery of the residuary estate be postponed until the end of a year from the death of the testator, the share assigned to Mrs. Blackwell must include her share of the interest earned by the securities in which the residuary estate has been invested.   To give the interest

to the remainderman, by treating it as a part of the principal, would be unjust to her.

The rule which gives the executor one year for the payment of legacies was made to secure him from embarrassment in the settlement of the estate. If he has no reason for withholding the *residuum* from the residuary legatees, he may, if he sees fit, pay or deliver it over at once, and then the life tenant will at once begin to receive the benefit of the interest. If the executor sees fit to retain the estate in his hands until the end of the year, that fact should not affect the rights of the life tenant. It should not subject him to the loss of the interest. " It appears now to be settled," says Roper, " that the tenant for life is entitled, from the death of the testator, to the income of all such parts of the residue as consist of moneys in the funds, government or real securities, or otherwise in a state of investment, in accordance with the directions of the will, so far, of course, as such income is not required for the payment of debts and legacies. The tenant for life is also entitled to the income of all such investments as may have been made pursuant to the will during the first year." 2 *Roper on Leg.* 1322; *Williamson* v. *Williamson,* 6 *Paige* 298. " The result of the English cases appears to be," said Chancellor Walworth, in that case, and I have not been able to find any in this country establishing a different principle, " that in the bequest of a life estate in a residuary fund, where no time is prescribed in the will for the commencement of the interest, or the enjoyment of the use or income of such residue, the legatee for life is entitled to the interest or income of the clear residue, as afterwards ascertained, to be computed from the time of the death of the testator." See, also, *Lovering* v. *Minot,* 9 *Cush.* 151, 156; *Lamb* v. *Lamb,* 11 *Pick.* 371; and 2 *Redf. on Wills* 570. It is suggested by the counsel of the executors that all the cases cited on the hearing, in which the rule under consideration has been applied, are cases in which the *residuum* has been given to a legatee for life, with remainder over, and that the rule does

not apply to such a case as this, where the *residuum* is given to trustees in trust to pay interest, &c. But it does apply to the case where the gift is to a trustee charged with the duty of investment, so far as any securities are concerned, upon which interest is received within the year, whether the securities be new investments or old, whether they be investments in which the fund is received from the estate of the testator or new ones made by the trustee. The fact that a trustee is interposed between the legatee and the legacy can make no difference in the application of the rule. The rights of the life tenant, as between him and the remainderman, in respect to the subject under consideration, are not changed or affected by that fact. *Hewitt* v. *Morris*, 1 *Turn. & R.* 241; *La Terriere* v. *Bulmer*, 2 *Sim.* 18; *Douglas* v. *Congreve*, 1 *Keen* 410; and *Lovering* v. *Minot*, 9 *Cush.* 151, were cases in which the *residuum* was given in trust for life, with remainder over, and where the interest which accrued from the death of the testator was awarded to the life tenant.

There will be a decree in accordance with these views.