AUGUSTA JORDON HOPKINS and JAMES F. MINTURN, executors and trustees,

*v.*

CLARA REMY.

[Submitted October 20th, 1902. Filed December 8th, 1902.]

Testatrix devised lands to her executors in trust to collect the rents, issues and profits during the life of her sister; to pay over to her sister during her life, out of said rents, issues and profits, $500 semi-annually, and, after paying municipal charges on the lands, to deposit the surplus of the rents to their credit in bank at interest, until her sister's death. She empowered and directed them, after such death, to sell said lands and to distribute the proceeds of the sale, together with the rents in bank, to other persons named. It appeared that the rents of said lands, after paying expenses of collection, repairs necessary to preserve the buildings thereon, insurance of the buildings and taxes and water rents imposed by municipal authority, were insufficient to enable the trustees to pay $500 semi-annually. Upon bill for construction of the will and direction of the trustees—*Held*, that the question submitted must be determined from the intent of the testatrix disclosed by the language of her will; that the plain intent indicated thereby was to devote to the payment of her sister, semi-annually, so much of the rents as remained, *after necessary expenditures to preserve the trust fund, not exceeding $500*, and if the remainder was insufficient for that purpose, they could not make up the deficiency by à resort to other portions of the estate, or by a mortgage or sale of said lands.

On bill for the construction of the following clause of the will of Charlotte Jordon, deceased:

"I give, devise and bequeath unto my executrix, Augusta Jordon Hopkins aforesaid, and my executor, James F. Minturn, counselor-at-law, of Hoboken, all the real estate of which I may die seized and particularly the premises known as numbers 609 and 611 Washington street, in the said city of Hoboken, being fifty feet in width, by one hundred feet in depth, in trust to collect the rents, issues and profits thereof during the lifetime of my sister Clara Remy, of Dudley, Illinois, and to pay over to her during her lifetime out of said rents, issues and profits the sum of five hundred dollars semi-annually, and after paying all taxes and other municipal charges against the same, to deposit the surplus of such rents to their credit in bank at interest, until the decease of my said sister, and

as soon as convenient after the decease of my said sister, I order, empower and direct my said trustees to sell the said real estate at public or private sale, as they may deem best, and then to divide the proceeds of said sale together with the rents in bank as aforesaid, in three equal parts and pay the same over in equal parts after the payment of all necessary expenses, to my said brothers, Jeremiah Moreau and Francis Moreau, and to my husband's said niece, Augusta Jordon Hopkins, and in the event of their death, then to their children or the survivors of them; and I hereby order, direct and empower my said trustees to make, execute and deliver to the purchaser or purchasers of said real estate good and sufficient deed or deeds to convey the same; and the said purchaser or purchasers shall not be obliged to see to the application of the purchase-moneys as aforesaid."

*Mr. James F. Minturn,* for the complainants.

MAGIE, CHANCELLOR.

The complainants, as executors and trustees under the will of Charlotte Jordon, deceased, who died September 12th, 1899, seek a construction of the clause of said will set forth in the statement prefacing this opinion.

They charge and prove that the rents which were collectible out of the lands devised to them in trust by said clause have not produced, and are not likely in future to produce, the sum of $1,000 annually beyond the expenses of collecting, the repairs necessary to preserve the buildings on said lands, insurance of said buildings against fire and the taxes and water rents imposed by municipal authority. They further charge that Mrs. Remy, to whom the clause directs them to pay $500 semi-annually, insists that she is entitled to such payment every six months, and that if the rents, issues and profits of the lands are insufficient to produce that sum, she is entitled to have any deficiency made up from other portions of the estate or from a sale of the lands devised by said clause.

It is to be regretted that the defendant who makes the claims which occasion this appeal to the court has not appeared or supported her claim by counsel. The claim presented is, so far as the research of complainants' counsel or my own research is concerned, novel in New Jersey.

In England, when portions were to be raised for daughters or for younger children, or debts or legacies were to be paid out of rents, issues and profits, there is a line of cases in the courts establishing the doctrine that sums thus required to be raised may be raised by a mortgage or sale of the lands.  This doctrine seems to be put upon the ground that when there is an express requirement, or an implication, arising from the circumstances that such sums were to be raised or such debts or legacies were to be paid at a time before the rents, issues and profits would have sufficed for that purpose, the intent to raise them by seasonable mortgage or sale must be attributed to the donor or testator. But when a testamentary provision required a fund to be raised out of the annual profits, or by particular kinds of leases, or other special modes, it was held that neither mortgage nor sale of lands could be resorted to.  *Trafford* v. *Ashton, 1 P. Wms. 415; Mills* v. *Banks, 3 P. Wms. 1; Ivey* v. *Gilbert, 2 P. Wms. 13; Evelyn* v. *Evelyn, 2 P. Wms. 659; Anonymous, 1 Vern. 104; Warburton* v. *Warburton, 2 Vern. 420.*  In attempting to discover the intent of a testator in respect to such provisions the limitation to annual rents, in express terms, was held not to be essential to prohibit a resort to mortgage or sale, but it would be sufficient if an intent is discoverable from the whole will to so limit the gifts.  *Baker* v. *Baker, 6 H. L. Cas. 616; Foster* v. *Smith, 1 Phil. 629.*

A like view is expressed in many American cases.  *Nudd* v. *Powers, 136 Mass. 273; Dehaven* v. *Sherman, 131 Ill. 115; Irwin* v. *Wollpert, 128 Ill. 527; Delaney* v. *Aulen, 84 N. Y. 16.*

An examination of the will of the testatrix indicates that the claim of Mrs. Remy is destitute of support from any permissible construction of its terms.  It thereby plainly appears that the testatrix felt assured that the income from the lands in question would always be sufficient to provide for the semi-annual payments of $500 to Mrs. Remy, for she provided that the surplus of the rents, issues and profits, not employed in making such payments, should be invested and held in trust until Mrs. Remy's death, and then be paid by the trustees to other persons.  But neither in the clause itself nor in any other part of the will was Mrs. Remy given any interest in the lands in case of the insuffi-

ciency of the rents, issues and profits to provide for the semi-annual payments. The power conferred by the testatrix upon the trustees during the life of Mrs. Remy was confined to the collection of the rents, issues and profits, and there was no express provision permitting them to sell the lands during Mrs. Remy's life. No provision for such sale can be implied, because the testatrix expressly conferred power upon them and directed them to sell the lands after the death of Mrs. Remy, and then to divide the proceeds of such sale, together with the accumulated surplus of the rents, issues and profits, after payments to Mrs. Remy, among other persons.

It does·not admit of doubt that the expression· "rents, issues and profits of land collected by trustees" means that sum of receipts from the land which remains—*first,* after maintaining the property by needed repairs and by protective insurance, and *second,* after payment of public charges.

Reading the whole will I find the plain intent to be to pay $1,000 annually out of the annual rents, issues and profits, and therefore out of what the trustees had of such rents, issues and profits wherewith to make payment. If they have not had, and shall not have, enough to make a full payment in any one year, no more can be exacted from them, or from the *corpus* of the estate, or from the residuary legatees.

If, in any subsequent year, a surplus should be produced, there may arise a question whether it can be used to make up past deficiencies, but the question is not now presented and need not be decided.

Complainants are entitled to a decree construing the will on the lines of the above opinion.