Albert J. Simpson, late of Newark, New Jersey, died October 7th, 1922, leaving a will containing the following provisions:
"Sixth: All the rest, residue and remainder of my estate, of whatsoever nature and wheresoever situate, whether real, personal or mixed, I give, bequeath and devise unto my executors and trustees hereinafter named, their heirs, successors in office and assigns in trust, however, for the purposes specified in this will, with full power to convert the same into cash, or otherwise, in their absolute discretion, investing and reinvesting the same in such securities as may be authorized by law, or retain the same as invested at my decease, having in mind the realizing of the best income possible, with power to lease any or all of my real estate, in such manner and on such terms — and for such rent as in their absolute discretion shall seem wise, and also from the net income and interest received from my personal and real estate, after deducting from said items of income the cost of keeping the real estate in good repair, the cost of insurance on the same, all taxes on both real and personal estate, and the charges and expenses of managing the trust, including transfer inheritance tax hereinafter specified, to dispose of said income for the following purposes:
(a) To pay unto Miss Minnie Kling the sum of twelve hundred dollars annually, for the term of her natural life, the same to be paid to her in regular semi-annual payments on the first days of January and July in each year.
(b) To divide the residue and remainder of said income in equal parts, in regular, semi-annual payments on the first days of January and July in each year, to and among my brothers William T. Simpson, Clifton H. Simpson and Walter F. Simpson, and my sister Clara A. Sauer, or the survivor of them, * * *."
Then followed certain conditions and provisos and the corpus
of the estate, after the death of the life tenants, was divided among a large number of individuals and institutions.
The decedent's estate consisted largely of real estate. The value of the whole estate was, at the date of his death, considerably in excess of $100,000. The real estate consisted of two separate parcels, one at 173-175 Somerset street, Newark, New Jersey, and the other at 225-227 Clinton avenue, Newark, New Jersey. Until the year 1929 the income from the estate was ample for the payment of $1,200 annually to the complainant and the balance of the income was distributed as provided in subsection b of paragraph 6 of the *Page 304 
will, above quoted. The executor and trustees under the will have made no payment whatever to the complainant since July, 1928. In 1928 the Somerset avenue property was sold for $30,000. That property was subject to a $6,000 mortgage and out of the proceeds of this sale $22,000 was paid in satisfaction of a mortgage on the Clinton avenue property. The Clinton avenue property is now free and clear of encumbrance. The last accounting of the executors filed under date of April 26th, 1929, shows a balance of income in the hands of the trustees of $2,307.28 and this sum and a part of the corpus of the estate were disposed of in commissions and counsel fees on the last accounting, with the result that the executors, while they had in their hands sufficient moneys to pay the installment due the complainant on January 1st, 1929, did not, after the passing of the final account, have sufficient income with which to pay the installment then due or those accruing since that date. This bill seeks a decree directing the executors and trustees to set up a separate and distinct trust of sufficient of the testator's property as will produce annually sufficient income to pay the complainant $1,200 every year in semi-annual installments, and alleges that the payment of the mortgage on the Clinton avenue property out of the proceeds of the sale of the Somerset street property was improper and unauthorized by the will. This allegation is based upon the contention that as the will gave the executors power only of investing and reinvesting "in such securities as may be authorized by law," the executors had no authority to pay off a mortgage on the Clinton avenue property as that was in effect investing the estate's money in real estate. Nowhere in the will is there any direction to the executors to set aside a separate fund for the benefit of the complainant. In this respect this case is very much like that of Hopkins v. Remy, 64 N.J. Eq. 12,
where it was held that if the income from the estate was insufficient to pay the semi-annual payments provided for in the will, recourse could not be had to the corpus of the estate and that only the net income was available for the purpose. Inasmuch as the will here under consideration did *Page 305 
not provide for the setting up of any portion of the whole estate as a separate trust for the benefit of complainant, I do not feel at liberty to direct that the executors now do so. In Homer v.Landis, 52 Atl. Rep. 494 (Maryland Court of Appeals), the court said:
"It seems impossible to suppose that, if the testator had it in his mind to dedicate any portion of the corpus of the trust estate to the accomplishment of the trust, he could have failed to use some language which would have expressed that intention."
The same may be said of the will here under discussion. Since in my judgment it was not necessary for the executors to set up a separate trust for the benefit of the complainant, and since the intention of the testator seems to have been that the entire net income of the estate should be distributed, every year in semi-annual payments, and since the complainant's interest is only in the net income remaining after the payment of the expenses and carrying charges of the estate, it is not now necessary to decide whether the executors were within their rights in using the proceeds of the Somerset street property in the payment of a mortgage on the Clinton avenue property. This may or may not have been the result of good business judgment. So far as the complainant is concerned it would not seem to make very much difference to her as her interest was in the income alone and the net income of the estate is undoubtedly as great now as it would have been if the proceeds of the sale of the Somerset street property had been invested in legal securities, as the executors would necessarily be obliged to apply the income from this investment to the payment of the interest accruing on the mortgage on the Clinton avenue property in order to protect that property from foreclosure sale.
The testimony of the defendants show that the present income of the Clinton avenue property, which now constitutes the sole asset of the decedent's estate, is, because of unavoidable and unanticipated vacancies, insufficient to pay the carrying charges on that property, so there is no net income for distribution at this time. It is suggested that under the *Page 306 
circumstances the executors ought to be directed to sell the Clinton avenue property and invest the proceeds which would enable them to pay the complainant the amount to which she is entitled annually and leave a substantial amount in addition for distribution amongst other life tenants. The testimony also shows, however, that because of the present depression in real estate values in the location of this property, it would not now sell for more than $75,000, whereas, in normal times, it ought to bring $100,000 or $125,000, and it is the opinion of experts that this property will have recovered its normal value within a short time, depending, of course, upon the condition of the real estate market. Under these circumstances it does not seem to me that this court would be justified in directing the executors to sacrifice the property by a sale at this time. The fact that this may result in depriving the complainant and the other life tenants of any income whatever during the period that this property is held by the executors is not a reason for directing a sale now, especially in view of the provision in the will for retention of testator's investments. Those ultimately entitled to the corpus of the estate have rights therein superior to the rights of the life tenants who are entitled only to the income. The rights of the former cannot be sacrificed for the benefit of the latter, and since the interest of the life tenants is in the income only, they cannot complain if there is no income for distribution so long as the executors and trustees act with complete bona fides. There is no evidence of any abuse of the discretion which is vested in these executors.
At the conclusion of the final hearing in this cause and upon examination of the various accounts of the executors and trustees, it appeared that on January 1st, 1929, the date of the first default in the payment of the semi-annual instalment to Minnie Kling, the executors had more than sufficient income in their hands to make the payment then due but that it was held by them pending the passing of their biannual account by the orphans court some months later and that upon the passing of that account the entire income remaining in their hands was paid out in counsel fees, executors' *Page 307 
commissions and other expenses. Other discrepancies appeared on the face of the account, and thereupon the matter was referred to a special master for the purpose of checking the various accounts of the executors and trustees in order to determine the exact amount of income which was or should have been in the hands of the executors and trustees on the designated dates for payment of income to the first life tenant, and whether or not any payments had been made out of income which should have been made out of principal and for other purposes mentioned in the order of reference. The master has now filed his account and it now appears that no improper or unauthorized payments or disbursements have been made out of either income or principal by the executors and trustees. Each and every one of the accounts has been audited and passed by the Essex county orphans court. The present proceeding is not in nature of an appeal from the decrees of the orphans court allowing those accounts, and, indeed, no appeal lies to this court in such matters. It is worthy of comment, however, that during the course of the administration of this estate the executors and trustees have received $134,494.84 of income out of which they have disbursed the sum of $108,676.78 besides fees, commissions and incidental expenses. In addition to this they have paid out the following sums: Counsel fees, $7,189.03; commissions to executors and trustees, $6,641.22; to the firm of Linnett Wolf, of which firm one of the executors and trustees is a partner, the sum of $5,409.86 for the following items: For collection of rent, $150.75; for commissions on sale of real estate, $496.25; for insurance premiums, $4,762.86. All of these expenses, however, have been approved by the Essex county orphans court and it is not now within the province of this court to disapprove of such allowances and disbursements. These circumstances suggest that future accounts of these executors and trustees might be worthy of more careful scrutiny in the court of accounting.
I will advise a decree dismissing the bill of complaint. *Page 308