The object of the bills filed in both these causes is the construction of the will of Gavin Rowe, who died February 2d 1931, a resident of Orange, New Jersey, and they have by consent been consolidated. The facts before the court are not in substantial dispute, most of them having been submitted by written stipulation. Portions only of the will need be recited, as follows:
"Second: I hereby give and bequeath to my beloved wife, Christina Miller Rowe, the sum of ten thousand ($10,000) dollars in cash, as well as all the furniture, furnishings and fixtures installed in my home on Cleveland Street in the City of Orange, New Jersey, such bequests to be hers absolutely and without any qualification whatsoever. I further direct that my wife be paid annually the income from ninety thousand ($90,000) dollars, for and during her natural *Page 346 
life, the amount thereof to be based upon the earning capacity of such ninety thousand ($90,000) dollars, during the various years for which the same shall be paid, she to be paid such income at such stated intervals as will make it convenient for her in the meeting of her expenses.
"Fourth: I give and bequeath to my Scottish Trustees the sum of three thousand dollars ($3,000) in cash in trust, however, for and to be used by them for and in their best discretion and judgment the benefit of the poor people of Lesmahagow, Lanarkshire, Scotland.
"Fifth: I give and bequeath the sum of one thousand dollars ($1,000) to my Scottish Trustees on the same terms and conditions for the benefit of the poor people of Lanark, Scotland; And in addition to all powers competent by the Statute or Common Law of Scotland to gratuitous Trustees all which, including power to resign office at any time, are hereby conferred on them, I empower my Scottish Trustees to charge against the said respective funds and income, if any, thereof, their usual and ordinary professional fees and charges for their services.
"Sixth: I give and bequeath to my brother, Alexander L. Rowe, of Atlanta, Georgia, and I direct my Trustees hereinafter named to pay the same, the income of eight thousand dollars ($8,000) for and during his natural life, the amount thereof to be based upon the interest upon the said sum at the rate of 5% per annum, during the various years for which the same shall be paid.
"Twenty-second: I give and bequeath to Messrs. McClure, Naismith and Brody, Solicitors of Glasgow, Scotland, the sum of three thousand dollars ($3,000) in cash, in trust, however, for and to be used by them, for and in their best discretion and judgment, the benefit of the poor people of Lesmahagow, Lanarkshire, Scotland, and the sum of one thousand dollars ($1,000) to McClure, Naismith and Brody, Solicitors of Glasgow, Scotland, on the same terms and conditions, for the benefit of the poor people of Lanark, Scotland.
"Twenty-third: I give and bequeath to the Stonybrook Association of Stonybrook, Long Island, the sum of five thousand dollars ($5,000), such bequest to be effective only at the termination of the trust estate hereinafter created by this instrument to be used for the Boys School."
Paragraph "third" of the will sets up a trust fund of $25,000 for the benefit of James C. Rowe, the testator's brother, who predeceased the testator, and which has therefore lapsed, and this provision of the will may be ignored. It is in this paragraph that the "Scottish trustees" are named.
Paragraphs seven, eight, ten, eleven, twelve, thirteen, fourteen, fifteen and sixteen contain presently payable legacies and also further legacies payable "at the termination of the trust estate hereinafter created by this instrument." *Page 347 
Paragraphs nine, seventeen, eighteen, twenty-third and twenty-fourth also contain legacies effective only "at the termination of the trust estate hereinafter created." The twentyfifth paragraph of the will (unnumbered) disposes of the residue. Several questions respecting the construction of the will are raised by the pleadings and in the arguments of counsel and they will be considered under the following heads:
1. Income on the trust fund of $90,000. 2. Legacies to trustees for poor people, c. 3. Legacy to Stony Brook association. 4. Construction of word "hereinafter." 5. Abatement. 6. Does bequest of income for life in second and sixth paragraphs of will carry the corpus?
These questions will be considered in the order stated.
 I. INCOME ON THE TRUST FUND OF $90,000.
The first problem presented goes to the construction of the words "earning capacity of such $90,000" in the second paragraph. It was agreed at the hearing that the executors should pay to the widow the actual net income earned annually on the fund which will be set aside in compliance with this provision of the will. The question as to the meaning of the words "earning capacity" was thus disposed of.
This being a legacy in trust, and not an annuity, interest starts to run one year after the death of the testator. Welsh
v. Brown, 43 N.J. Law 37; Caldwell National Bank v. Rickard,103 N.J. Eq. 516.
 II. LEGACIES TO TRUSTEES FOR POOR PEOPLE, c.
The trusts created by paragraphs "fourth" and "fifth" for the benefit of the poor people of Lesmahagow and for the benefit of the poor people of Lanark, Scotland, are good and *Page 348 
enforceable trusts. Hesketh v. Murphy, 35 N.J. Eq. 23;affirmed, 36 N.J. Eq. 304; MacKenzie v. Trustees of Presbyteryof Jersey City, 67 N.J. Eq. 652; Case v. Hasse, 83 N.J. Eq. 170.
Paragraph twenty-two of the will is clearly a repetition of the gifts contained in paragraphs "fourth" and "fifth," and must fall under Dickinson v. Overton, 57 N.J. Eq. 26.
 III. LEGACY TO STONYBROOK ASSOCIATION.
The name of the legatee in the twenty-third paragraph of the will is clearly erroneous, it being evident from the testimony that the testator had in mind as the object of his gift the Stonybrook Assembly, Incorporated, a corporation of New York, and not the Stonybrook Association. The Stonybrook Assembly, Incorporated, operates a boys' school in which the testator was actively interested. He visited the school and made contributions to it during his lifetime. It was competent to show by extrinsic evidence that the testator meant the Stonybrook Assembly, Incorporated. German Pioneer Verein v. Meyer, 70 N.J. Eq. 192;Caldwell National Bank v. Rickard, supra.
 IV. CONSTRUCTION OF THE WORD "HEREINAFTER."
Paragraphs seven to eighteen inclusive and twenty-three and twenty-four contain bequests which are to be paid "at the termination of the trust estate hereinafter created by this instrument." There is very little doubt that the testator intended to use the word "hereinbefore" instead of the word "hereinafter," otherwise there would be no efficacy to these bequests.
Paragraphs twenty-three and twenty-four are, except for the residuary clause, the last two dispositive paragraphs of the will and there is no subsequent provision for any trust. *Page 349 
The word "hereinafter" in those two paragraphs is therefore entirely meaningless.
The trusts created in paragraphs two and three are stated to be for the lifetime of the persons mentioned therein. The trusts in paragraphs four and five are the charitable trusts for the poor people of Lesmahagow and Lanark, Scotland, and are perpetual. There is a repetition of these charitable trusts in paragraph twenty-two.
Therefore, if the legacies described in paragraphs seven to eighteen, inclusive, are to become effective upon the "termination" of the perpetual charitable trusts set up in paragraph twenty-two they will never take effect. The substitution of the word "hereinbefore" for the word "hereinafter" in paragraphs seven to eighteen will permit the establishment of the bequests in paragraphs seven to eighteen upon the death of the testator's widow. Any other construction will vitiate those bequests.
To arrive at a sensible and intelligent construction of a will, and to give effect to what obviously must have been the intention of the testator it is proper, and often necessary, to substitute one word for another. Thus in Swetland v. Swetland, 100 N.J. Eq. 196,
I found it necessary to construe the word "foregoing" to mean "following"; and "herein" as "therein"; to substitute the word "and" for "or" and to construe the words "with regard" to mean "without regard." See, also, 2 Schoul. Wills (6th ed.) §874.
 V. ABATEMENT.
It is feared that the estate will be insufficient to pay all of the bequests mentioned in the will, and that there must be an abatement.
There is only one specific legacy, viz., the gift of "all the furniture, furnishings and fixtures installed in my home on Cleveland street in the city of Orange, New Jersey (Kearns v.Kearns, 77 N.J. Eq. 453); and in the absence of any contrary intention expressed in the will, it does not abate until *Page 350 
after the general legacies are exhausted. Moore's Executor v.Moore, 50 N.J. Eq. 554.
All of the other legacies of this estate are general legacies and should abate ratably.
The language of the first paragraph to the effect that the $10,000 bequest to the testator's widow should be "hers absolutely and without any qualification whatsoever" does not entitle that bequest to any priority of payment. Titus'Administrator v. Titus, 26 N.J. Eq. 111.
In the latter case a legacy in question read as follows: "And it is my will, and I hereby order and direct my executor to pay the foregoing bequests, in the order in which they are above stated, and out of the first moneys that shall come into his hands, after paying my debts and funeral expenses." Chancellor Runyon held (at p. 117):
"There are exceptions to the general rule of abatement above stated, but the burden of proving that he is entitled to priority is upon the party seeking it, and the proof must be clear and conclusive. Wills containing expressions, equivalent or similar to those in that under consideration, have been passed upon by the courts, and the general legacies thereby given have been decreed to abate proportionately, notwithstanding such directions."
The chancellor cited Brown v. Allen, 2 Vern. 31, in which Lord Nottingham held that when there are several general legacies they abate ratably in case of deficiency of assets, notwithstanding the fact that one of them is directed to be paid in the first place; and Beeston v. Booth, 4 Madd. 161, in which it was held by Sir John Leach that there was no priority between two sets of legacies even though one set was to be paid "in the next place, after payment of debts and expenses," and the other set of legacies was to be paid "afterwards."
In Duncan v. Franklin Township, 43 N.J. Eq. 143, Chancellor Magill said (at p. 145):
"The burden of proving that a general legacy is entitled to priority is upon him who asserts it and the proof must be clear, conclusive and unequivocal."
A comprehensive note on the subject of preferences among general legacies is found in 34 A.L.R. 1247, in which the *Page 351 
author says (at p. 1263), citing Titus' Administrator v.Titus, supra, and other authorities:
"Circumstances of near relationship and dependence of the general legatee are not of themselves sufficient to indicate an intention on the part of the testator to give a preference over other general legatees, although such facts may be regarded as an auxiliary reason for allowing the preference, if the will fairly justifies an inference that such was the intention."
It is an entirely acceptable explanation of the words "absolutely and without any qualification whatsoever," as used with reference to the legacy of $10,000 given to the testator's widow, that he intended that she should have this legacy in fee as distinguished from the life estate in the $90,000 trust fund created in the same paragraph. The words "to be hers absolutely" might well be taken to indicate that the testator intended that she should have that legacy without any remainder or reservation, and that he desired to make that intention clear because of the life estate which immediately followed.
That the testator did not intend that there should be any preference of payment by the use of the words which he employed in the first paragraph is evidenced by the fact that in several of the succeeding paragraphs he says, in making bequests, that they should be unconditional. The words "absolutely and without any qualification whatsoever" may carry with them more force than the use of the words "unconditional," but their effect cannot be any different.
It is argued that the legacies which total $79,500 and which are to be paid upon the termination of the trusts are demonstrative legacies, and that consequently they should abate after general legacies.
In the case entitled In re Low, 103 N.J. Eq. 435, I noted the difference between general, specific and demonstrative legacies. And in Johnson v. Conover, 54 N.J. Eq. 333; affirmed, sub nom.Stillman v. Johnson, 55 N.J. Eq. 592, Vice-Chancellor Reed dwelt at length on demonstrative legacies, and held that the legacy in the case before him was demonstrative, and (at p.337) said: *Page 352 
"A general legacy is payable out of any personalty, or, if properly charged, out of the real estate of the deceased. In this respect a demonstrative legacy has the quality of a general legacy. It differs from a specific legacy in this respect, that the former bequeaths certain property in specie, while the latter gives generally a sum of money to be primarily raised out of certain specified property."
See, also, Pennsylvania Company for Insurance on Lives andGranting Annuities v. Riley, 89 N.J. Eq. 252, and 28 R.C.L.tit. "Wills," § 266.
The legacies totaling $79,500 are not payable out of any particular property or funds. The time of payment is fixed, but the source is not. They are payable after the termination of the trusts set up in paragraphs two and six, being the trust fund of $90,000 set up for the widow and $8,000 set up for the testator's brother; but they are not made payable in express or clear language out of these funds.
The testator is presumed to have made a sensible and equitable disposition of his property (Johnson v. Conover, supra — atp. 339) and I cannot believe that this testator intended that the legacies to his widow and brother should abate before the legacies to those mentioned in paragraphs seven to eighteen inclusive. A much more rational construction is that these various legacies should abate proportionately.
 VI. DOES BEQUEST OF INCOME FOR LIFE IN SECOND AND SIXTH PARAGRAPHS OF WILL CARRY THE CORPUS?
The bequest of the income on the trust funds created by these two paragraphs of the will is not a bequest of the corpus of the fund because they are limited to the life of the cestuis quetrustent and the corpus falls into the residue after the life estate is spent. Skellenger's Executors v. Skellenger'sExecutor, 32 N.J. Eq. 659; Westfield Trust Co. v. Beekman,97 N.J. Eq. 140, 148; affirmed, 99 N.J. Eq. 435; Caldwell NationalBank v. Rickard, supra.
I will advise a decree accordingly. *Page 353