The bill is filed by the complainant as trustee under the will of Harriet Levy, deceased, and seeks its construction. The will is dated January 14th, 1929, and a codicil was executed May 15th, 1933. The testatrix died a resident of Toms River, New Jersey, November 2d 1933. Of her immediate family and household there survived her husband, Samuel Levy, her stepmother, Pauline Lipschuetz, and her half-sister, Birdie L. Jennings. Surviving her also were her sister, Rosa Cohen, since deceased, and her nephews, Samuel L. Cohen and Milton M. Cohen, who reside in Philadelphia; her cousin, Fannie B. Brewer, and David C. Brewer, husband of Fannie, of Toms River, New Jersey, all of whom were *Page 23 
named as legatees in her will. Another legatee, Amanda E. Arrott, predeceased the testatrix and the bequest to her was revoked by the codicil.
By the first two clauses of the will testatrix directed the payment of her debts and bequeathed the sum of $500 for the upkeep of cemetery lots. The remainder of the will, in so far as pertinent to the present inquiry, and except for the clauses containing the bequest to Amanda E. Arrott, and the later revoking codicil (the several paragraphs being arbitrarily numbered for convenience), is as follows:
1. "Third. All the rest, residue and remainder of my estate, real and personal, of which I may die seized or possessed, or over which I may have testamentary control, or to which I may be in any way entitled, of whatsoever the same may consist and wheresoever situate. I give, devise and bequeath to my trustee hereinafter named, to have and to hold the said rest, residue and remainder upon and for the following trusts and purposes, that is to say:
2. "Upon trust to lease all my real estate for reasonable rent, and out of the net income derived therefrom, and the net income and interest received from my personal estate, after deducting the cost of keeping the real estate in good repair, and the cost of insurance of the same, and all taxes on both real and personal estate, and the charges and expenses of managing the trust, to pay over to my husband, Samuel Levy, Twenty Four Hundred Dollars annually, to be paid in semi-monthly payments of One Hundred Dollars each, during the term of his natural life.
3. "To pay to my sister, Birdie L. Jennings, during the lifetime of my said husband, Samuel Levy, the sum of One Thousand Dollars annually, to be paid to her in equal monthly payments.
4. "At and after the death of my said husband, Samuel Levy, to pay to my said sister, Birdie L. Jennings, the sum of Two Thousand Dollars annually, to be paid to her in equal monthly payments during the term of her natural life.
5. "At the death of my said husband, Samuel Levy, I direct my trustee to pay the following bequests, viz.: I give and bequeath to my sister, Rosa Cohen, the sum of Five Thousand Dollars, to her and her heirs forever.
6. "I give and bequeath to my nephew, Milton M. Cohen, the sum of Five Thousand Dollars, to him and his heirs forever.
7. "I give and bequeath to my nephew, Samuel Lipschuetz Cohen, the sum of Five Thousand Dollars, to him and his heirs forever.
8. "I give and bequeath to my step-mother, Pauline Lipschuetz, the sum of One Thousand Dollars, to her and her heirs forever.
 * * * * * * * *
9. "I give and bequeath to my cousin, Fannie B. Brewer, the sum of One Thousand Dollars, to her and her heirs forever. *Page 24 
10. "I give and bequeath to my friend, David C. Brewer, the sum of One Thousand Dollars, to him and his heirs forever.
11. "I direct that the above bequests, including the one to Congregation Adath Jeshurum Cemetery, shall be paid from the principal of my estate.
12. "At and after the death of my sister, Birdie L. Jennings, to pay to the children living of the said Birdie L. Jennings, Milton M. Cohen and Samuel Lipschuetz Cohen the sum of One Thousand Dollars to each annually, in equal monthly payments, provided the net income from the trust fund is sufficient to meet such payments; if not sufficient the net income shall be pro-rated to each child.
13. "When the said children shall have reached the age of thirty-five years, should the said Birdie L. Jennings be then dead, otherwise at the death of the said Birdie L. Jennings, I give, devise and bequeath an equal share of the trust property to each of said children, and I direct my trustee to turn over and pay all the principal of said trust property and accumulated income, if any, to each child when he or she becomes thirty-five years of age, provided Birdie L. Jennings be then dead, otherwise at her death.
14. "Should any of the said children decide to take a college course, I direct my trustee to pay the expense of said course or courses, and if necessary to expend a part of the principal from said child's or children's trust property.
 * * * * * * * *
15. "I direct my trustee to invest all unexpended income in stocks, bonds and securities legally authorized and add the same to the principal of my estate."
Fannie B. Brewer, David C. Brewer and Pauline Lipschuetz, three of the legatees named in the will, died after the testatrix and before Samuel Levy. Rosa Cohen, another of the legatees, died after Samuel Levy, but before this bill was filed. Of the legatees named in the will only Birdie L. Jennings, Milton M. Cohen and Samuel L. Cohen are now alive. Birdie L. Jennings has one child, Frederick Lipschuetz Jennings, and Samuel L. Cohen and Milton M. Cohen are childless.
Eleven questions touching the construction of the will are propounded in the bill of complaint and discussed in the briefs of counsel under captions "A" to "K," inclusive. They may be summarized as follows:
1. Are the bequests to Samuel Levy and Birdie L. Jennings payable at all events, and out of corpus if the income is insufficient, or only out of income? This comprises "A," "C," "E," "G" and "H." *Page 25 
2. Are the monthly sums bequeathed to Samuel Levy and Birdie L. Jennings payable immediately upon testatrix' death or only beginning one year thereafter? This comprises "B" and "D."
3. Is either of such bequests to be preferred over the other? This comprises "F."
4. May deficiencies in income payable to these two legatees in any year be made up out of surplus of income of other years?
5. Were the legacies to Pauline Lipschuetz, Fannie B. Brewer and David C. Brewer vested or contingent; and did they lapse upon the legatee's death during the lifetime of Samuel Levy? This comprises "K."
6. Are the money bequests to Rosa, Milton M. and Samuel L. Cohen now payable, notwithstanding the balance of the estate will not produce sufficient income to pay Mrs. Jennings $2,000 per annum? This comprises "I" and "J."
In the briefs of counsel much space is given to the discussion of the question as to whether or not the bequests to Samuel Levy and Birdie L. Jennings are annuities or bequests of income only; but it is of little moment whether we call these bequests annuities or bequests of income. "The legal definition of the word `annuity' has been the cause of puzzlement of mind, and there is a wealth of embarrassment in the decisions of the courts." 3 C.J. § 1373. But there is no magic in the word "annuity." Mills v. Drewitt, 20 Beav. 632; 52 Eng. Reprint748, cited in note, L.R.A. 1917E 584. In 2 Amer. Juris. 819, an annuity is distinguished from the grant of the income or interest of a certain fund, payable only out of profits to be accrued. It is there said that "an annuity is a fixed sum and is generally given absolutely, whereas the income from a fund, constituting net profits to be earned after the deduction of expenses, may vary in amount from year to year, and so is necessarily uncertain."
These bequests might properly be termed limited or income annuities. They are annuities in the sense that they are limited to certain sums per annum, and bequests of income in that they are payable only out of net income. *Page 26 
It appears from the proofs that at the time the will was executed, the testatrix considered her estate of a value in excess of $100,000 and ample to produce sufficient income for the payment of the annual sums bequeathed to her husband and to her half-sister, besides the costs of administration, and including taxes, insurance and repairs. She was undoubtedly correct in her estimate of value according to standards existing at that time; but before her death, and, indeed, at the time of the execution of the codicil to her will, there had been a marked depreciation in that value, and immediately after her death the estate was appraised for inheritance tax purposes at $49,575.75. It did not, during Samuel Levy's lifetime, produce sufficient income to pay $2,400 per annum to him and $1,000 per annum to Mrs. Jennings, and the net income after the expiration of one year from testatrix' death was pro-rated between these two legatees, Samuel Levy receiving, from November 2d 1934, to March 9th, 1936, the date of his death, only $2,365.13; and Mrs. Jennings, during the same period, receiving only $985.47. Nor has the estate produced sufficient income since Mr. Levy's death to pay Mrs. Jennings $2,000 per annum as provided in the will; in fact, after Mr. Levy's death no income was paid to Mrs. Jennings until August 14th, 1936, when the Ocean county orphans court ordered the trustee to pay her $75 per month, which has been done. During the year immediately preceding the final hearing in this cause, the gross income on the whole estate was $3,538.68 and the net income $1,887.23.
Obviously, a deficiency in income was an unforeseen contingency not provided for. It is an unfortunate circumstance; but may the court supply the omission?
Before discussing the several questions touching the construction of this will, a few of the established general rules of construction here applicable should be stated.
In construing a will, the intention of the testator, if apparent, is controlling; but courts are not permitted to speculate — the testator's intent must be determined by his own language, not by what we would have him say. In re Low, 103 N.J. Eq. 435.
Technical words always yield to intention, *Page 27 
if discernible. Blanchard v. Blanchard, 116 N.J. Eq. 435;affirmed, 122 N.J. Eq. 372. It is the duty of the court to construe a will as written, and we may not surmise or guess what a testator would have done had he foreseen what would happen after his death, and then try to give effect to his supposed intentions. Ibid.
"Where the intention of the testator violates no principle of law or morality, it is the only guide in giving effect to a will, notwithstanding it may be unreasonable, and where the intention is clear, the situation of the testator, or of his family, or property, will not be taken into consideration, but where taking the whole will together, the intention is not clear, such a construction will be adopted as will relieve against a hardship, and lead to a just and proper result."
"If the language is not ambiguous, and the intention is signified by apt words and phraseology, there is no room for construction. It is not proper for the court first to determine what the will ought to be, and then exercise its ingenuity in producing such a result." Brearley v. Brearley, 9 N.J. Eq. 21.
"Courts are not at liberty, because an event has happened which the testator has not provided for, to disregard the ordinary rules of construction that words must be read according to their natural and reasonable meaning, and inject into the will the provisions which the testator would probably have made had he contemplated the happening of the contingency." Stout v. Cook,79 N.J. Eq. 573.
In the light of these rules, I will now attempt to construe the will as written.
 1 Are the bequests to Samuel Levy and Birdie L. Jennings payableat all events and out of corpus if the income is insufficient, oronly out of income?
So far as this court is concerned, the question is not an open one, but must be considered as disposed of by Hopkins *Page 28 
v. Remy, 64 N.J. Eq. 12, and Kling v. Van Cleeve, 106 N.J. Eq. 302.
See, also, Blanchard v. Blanchard, supra, andPennington v. Metropolitan Museum of Art, 65 N.J. Eq. 11. The case of Kling v. Van Cleeve, supra, is practically on all fours. Here the intention of the testatrix seems clear from the plain language of the will and there is no room for construction.Fidelity Union Trust Co. v. J.R. Shanley Estate Co., 113 N.J. Eq. 562,565. The pertinent portions of the will are paragraphs 1, 2, 3 and 4. By the language of paragraph 2, these annual payments are definitely limited to the net income and it is that income alone which may be applied to their payment. The fact that there is a gift over of the trust fund after the death of the annuitants is an added indication that testatrix did not intend these monthly payments to be a charge upon the corpus.
Deficiencies in the income payable to Samuel Levy and Birdie L. Jennings may not be made up from corpus.
 2 Are the monthly payments bequeathed to Samuel Levy and BirdieL. Jennings payable immediately upon testatrix' death or onlybeginning one year thereafter?
These are undoubtedly general legacies. Rowe v. Rowe,113 N.J. Eq. 344. As a general rule, such legacies are payable one year after testatrix' death. Welsh v. Brown, 43 N.J. Law 37.
There are three exceptions to this rule stated in the cited case, (1) a legacy in satisfaction of a debt; (2) a legacy to a minor child or one to whom testator is in loco parentis and there is no provision for maintenance of the legatee; (3) where the bequest is of the residue or some aliquot part thereof in trust to pay the interest or income to a legatee for life with a gift of the principal over at his death.
It is clear that this case does not come within either the first or the second exceptions. Testatrix' husband apparently had some estate of his own — he left a will and his executors *Page 29 
are parties to this proceeding. The value of his estate is not shown by the proofs, but in the absence of proofs it may be assumed that it was sufficient for his support and maintenance. There is nothing in the will itself or in the proofs to indicate that these legacies were to provide support and maintenance for the legatees. While the relationship between testatrix and Mrs. Jennings was apparently much closer and more affectionate than the actual blood relationship would suggest, I think it cannot be said that testatrix stood in loco parentis to her, especially as she was then residing with her own mother (albeit in the same household with testatrix) at the time of testatrix' death. As was said by Chancellor Runyon in Hennion's Ex'rs v. Jacobus,27 N.J. Eq. 28, "she is an adult, and a married woman. There is no evidence in the will that the interest is given to her for her support. Besides, it is presumed that her support and maintenance are provided by her husband."
However, there is in the first numbered paragraph of the will a gift of the residue in trust; and in paragraphs 2, 3 and 4 a gift of the income on that fund to the husband and half-sister; and, in paragraph 5, there is a gift over of a portion of the principal upon the death of the one; and, in paragraph 13, a gift over of the balance of the principal of the trust upon the death of the other of the life beneficiaries. An annuitant is regarded as a life tenant. 2 Underhill, Wills 1086 p. 768.
These facts would seem to bring the case within the third exception to the general rule as stated in Welsh v. Brown,supra. In Davison v. Rake, 44 N.J. Eq. 506; affirmed, 45 N.J. Eq. 767
(at p. 508), Vice-Chancellor Van Fleet admirably states the exception and the reasons upon which it is founded as follows:
"And so also where a gift is made of the interest, either of the whole of the residue, or of a particular part of it, to one person for life, and the principal is given over to another on the death of the life tenant, the life tenant is entitled to interest from the date of the testator's death. This exception rests on special considerations, and was designed to prevent *Page 30 
the injustice which would necessarily result to the life tenant from the adoption of the general rule. To adopt the general rule in such a case would, it will be seen at a glance, result in the augmentation of the principal fund by the addition of one year's interest, and the remainderman would thus be given just that much more, as principal, than existed as principal at the time of the testator's death. It would deprive the life tenant of one year's interest, and convert that much interest into principal and take it from the life tenant and give it to the remainderman."
And see 2 Underhill, Wills 1086 ¶ 768; 2 Rop. Leg. 1320; PerryTrusts § 551; 69 C.J. 943; Green v. Green, 30 N.J. Eq. 451;affirmed, sub nom. Green v. Blackwell, 32 N.J. Eq. 768; VanBlarcom v. Dager, 31 N.J. Eq. 783; New Jersey Title Guarantyand Trust Co. v. Smith, 90 N.J. Eq. 386; Union County TrustCo. v. Gray, 110 N.J. Eq. 270. It is conceived that there is no difference in principle between the interest upon a particular part of the residue, and a particular part of the interest on the whole residue, at least so far as the application of the rule of this exception is concerned. However, under the facts of this case the rule of the exception may be literally applied because the interest on the whole of the residue was never sufficient to pay the life tenants their due.
It follows that the monthly payments became payable at the expiration of one month after testator's death.
 3 Is either of such bequests to be preferred over the other?
These legacies are in the same class, and are the remaining two payable during the lifetime of testatrix' husband. They are limited or income annuities. The income being insufficient to pay both bequests, it was properly pro-rated by the trustees during the lifetime of Samuel Levy. Titus' Adm'r v. Titus, 26 N.J. Eq. 111; Rowe v. Rowe, supra; 1 Rop. Leg. 410. *Page 31 
 4 May deficiencies in income in any year be made up out ofsurplus income of other years?
The general rule is stated in 69 C.J. 944, as follows: "In the absence of a contrary intention appearing from the will, where there is an annuity to be paid from the income of the estate, and for some years there is an insufficient amount of income to pay the annuitant, and then there is a surplus income, the deficiency arising from former years should be paid from the surplus of income."
There is nothing in the will indicating an intention contrary to this rule and it will be applied here.
 5 Were the legacies to Pauline Lipschuetz, Fannie B. Brewer andDavid C. Brewer vested or contingent; and did they lapse upon thelegatees' death during the lifetime of Samuel Levy?
The language of the will is "At the death of my said husband * * * I direct my trustee to pay" * * * and "I give and bequeath."
The general rule applicable is that stated in 1 Rop. Leg.565, that wherever the time is annexed to the legacy, and not to the payment of it, if the legatee die before the day of payment, the legacy is lapsed.
In Howell, Executor, v. Green, Administrator,31 N.J. Law 570, Chancellor Green, speaking for the court of errors and appeals, said: "It is a well settled rule of construction that a gift of a legacy `at,' or `when,' or `after' a given event occurs, vests only upon the happening of that event." And seeVan Dyke's Adm'r v. Vanderpool's Adm'r, 14 N.J. Eq. 198, 207;Clement v. Creveling, 83 N.J. Eq. 318; Lorillard v. Kent,99 N.J. Eq. 509. Where there is no express gift of a legacy, distinct from the direction for its payment, the *Page 32 
legacy does not vest until the time of payment arrives. There are some so-called exceptions to the rule, but they are not applicable. Applying this rule it is clear that the legacies of $1,000 each to Pauline Lipschuetz, Fannie B. Brewer and David C. Brewer did not vest but lapsed into the residue because they all died before the testatrix.
 6 Are the money bequests to Rosa Cohen, Milton M. Cohen andSamuel L. Cohen now payable notwithstanding the balance of theestate will not produce sufficient income to pay Mrs. Jennings$2,000 per annum?
Stripped of formal legal verbiage, paragraphs 5, 6, 7 and 11 may be condensed to read: "At the death of my husband I direct my trustee to pay to Rosa, Milton and Samuel Cohen $5,000 each from the principal of my estate."
There are two periods of distribution of principal named, the first in paragraph 5, and the second in paragraph 13. It is evident that testatrix believed that after the first distribution there would be ample funds left to provide an income of $2,000 for her half-sister, and she did not provide for the unforeseen contingency which has arisen. For the court to now do so would be, in effect, to write a new will for the testatrix; but this it cannot do. She has directed that a portion of her estate be now distributed among three of her relatives, and this must be done. But in considering this question of preference, it should be borne in mind that there are two separate and distinct bequests of income annuities to Mrs. Jennings. The first is by paragraph 3 of the will and is pur autre vie; the second is by paragraph 4 and is for her own life. The term of the first annuity has spent itself; that of the second did not begin until the death of Samuel Levy. This bequest and the bequests to the three Cohens vested at the same time and are payable out of the same trust fund. It is obvious that if the three bequests of $5,000 each are first paid, the remaining estate will be insufficient *Page 33 
to produce the full amount of the legacy to Mrs. Jennings. Indeed, the whole estate will not produce that amount. But, as already suggested, the court cannot now write a new will for testatrix. "It is not proper for the court to * * * determine what the will ought to be, and then exercise its ingenuity in producing such a result." However, these four legacies, vesting at the same time and payable out of the same fund, i.e., the residue, are in the same class and may be considered as general legacies — demonstrative in the sense that they are payable out of the same fund — and all are subject to abatement proportionately. Titus' Adm'r v. Titus, supra; Rowe v. Rowe,supra; Chemical Bank and Trust Co. v. Barnett, 114 N.J. Eq. 4;1 Rop. Leg. 410. In order to determine the amount which should now be payable in satisfaction of the three Cohen legacies, there will be a reference to a master for the purpose of determining the value of Mrs. Jennings' annuity as of the date of the death of Samuel Levy and the amount by which each of the four legacies must abate in accordance with the practice suggested by Vice-Chancellor Backes in Chemical Bank and Trust Co. v.Barnett, supra.
Questions touching the distribution of the balance of the estate as directed by paragraph 13 of the will, or of the applicability of the rule against perpetuities are not now involved.
I will advise a decree accordingly. *Page 34